# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA TECHNOLOGIES OY, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) C.A. No. 23-cv-1237-GBW |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| HP, INC., | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |
| | ) |
| | ) |

## DEFENDANT/COUNTERCLAIM PLAINTIFF HP INC.'S
## ORIGINAL ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT, AND ORIGINAL COUNTERCLAIMS

Defendant HP Inc. ("HP"), by and through its attorneys, hereby submits its Answer, Defenses, and Counterclaims to the Complaint filed by Plaintiff Nokia Technologies Oy ("Nokia"). The paragraph numbers in this Answer correspond to the paragraph numbers in the Complaint. For convenience and clarity, HP will also use the same headings as set forth in the Complaint. In doing so, HP does not admit any of the allegations contained in Nokia's headings. All allegations of the Complaint not expressly admitted in this Answer are denied.

## NATURE OF THE ACTION

1.        HP admits that the H.264 and H.265 Standards are promulgated by the International Telecommunications Union ("ITU"). HP admits that Nokia has submitted declarations that its patent portfolio includes claims essential to decoding video according to the H.264 and/or H.265 Standards. HP denies that Nokia has established that any claims of the Asserted Patents are, in fact, essential for compliance with the H.264 and H.265 Standards. HP

1

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1, and therefore denies them.

2.      Denied.

3.      HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and therefore denies them.

4.      HP denies that Nokia has established that claims of the Asserted Patents are essential for compliance with the H.264 and H.265 Standards. HP admits that Nokia has submitted declarations that its patent portfolio includes claims essential to decoding video according to the H.264 and/or H.265 Standards. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore denies them.

5.      Denied.

6.      HP lacks knowledge or information sufficient to form a belief as to the truth of the first sentence of Paragraph 6, and therefore denies the allegations therein. The remaining allegations in Paragraph 6 are denied.

## PARTIES

7.      HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore denies them.

8.      HP admits that it is a Delaware corporation with a principal place of business located at 1501 Page Mill Road, Palo Alto, CA 94304.

## JURISDICTION AND VENUE

9.      The allegations in Paragraph 9 are conclusions of law to which no response is required, and they are therefore deemed denied.

10.      HP lacks knowledge or information sufficient to form a belief as to the truth of the second sentence of Paragraph 10, and therefore denies it. HP admits that it is a Delaware corporation with a principal place of business in California. The remaining allegations in Paragraph 10 state a conclusion of law to which no response is required, and they are therefore deemed denied. To the extent that a response may be required, HP does not contest, for purposes of this case only, that this Court has federal jurisdiction over the case.

11.      HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies them.

12.      The allegations of Paragraph 12 are conclusions of law to which no response is required, and they are therefore deemed denied.

13.      HP denies that it "has committed acts of infringement in this District." The remaining allegations in Paragraph 13 state a conclusion of law to which no response is required. To the extent that a response may be required, HP does not contest, for purposes of this case only, that this Court has personal jurisdiction over HP.

14.      HP admits that it has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801 as a registered agent for service of process. The remaining allegations in Paragraph 14 state a conclusion of law to which no response is required, and they are deemed denied. To the extent that a response may be required, HP does not contest, for purposes of this case only, that this Court has personal jurisdiction over HP.

15.      The allegations of Paragraph 15 set forth conclusions of law to which no response is required, and they are deemed denied. To the extent that a response may be required, HP does not contest, for purposes of this case only, that venue is proper in this District.

3

## NOKIA'S INVESTMENT IN VIDEO CODING STANDARDS AND RESULTING PATENTS

16.    HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies them.

17.    HP admits that, in early 1998, the ITU's Telecommunication Standardization Sector (ITU-T) Video Coding Experts Group (VCEG) issued a call for proposals on a project it called H.26L. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and therefore denies them.

18.    HP admits that the ITU has published "ITU-T Recommendation H.264" and "ITU-T Recommendation H.265." HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and therefore denies them.

19.    HP admits that internet traffic has evolved in recent decades, and video use has increased. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19, and therefore denies them.

20.    HP states that "ITU-T Recommendation H.264" and "ITU-T Recommendation H.265" speak for themselves and denies the allegations in Paragraph 20 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20, and therefore denies them.

21.    HP states that "ITU-T Recommendation H.264" speaks for itself and denies the allegations in Paragraph 21 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21, and therefore denies them.

22.    HP states that "ITU-T Recommendation H.265" speaks for itself and denies the allegations in Paragraph 22 to the extent inconsistent therewith. HP lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and therefore denies them.

23.     HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies them.

24.     HP denies that Nokia has established that the Asserted Patents are patents with standard essential claims relating to the H.264 and H265 Standards. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24, and therefore denies them.

## NOKIA'S COMPLIANCE WITH THE ITU COMMON PATENT POLICY AND NOKIA'S RELEVANT DECLARATIONS

### A.     The ITU and the H.264 and H.265 Standardization Process

25.     HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them.

26.     HP admits that the ITU has published "ITU-T Recommendation H.264" and that "the H.264 Standard" exists. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore denies them.

27.     HP admits that the H.265 Standard was developed after development of the H.264 Standard and is titled "High efficiency video coding." HP otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies them.

28.     HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies them.

29.     HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies them.

30.     HP admits that the ITU has a "Common Patent Policy." The terms of the Common Patent Policy and the obligations resulting therefrom speak for themselves. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30, and therefore denies them.

31.     HP admits that the ITU, International Organization for Standardization, and the International Electrotechnical Commission published "Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC" in December 2022. The Guidelines speak for themselves and HP denies the allegations in Paragraph 31 to the extent inconsistent therewith. HP denies that a document entitled "Guidelines for Implementation of the Common Patent Policy for ITUT/ITURIISOIIEC" is available at https://www.itu.int/itudoc/itut/patents/policy/guide.pdf. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31, and therefore denies them.

32.     HP states that "Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC" speaks for itself and denies the allegations in Paragraph 32 to the extent inconsistent therewith. HP denies that a document entitled is available at "Common Patent Policy for ITU-TIITU-RIISOIIEC" https://www.itu.int/en/ITUT/ipr/Pages/policy.aspx.

33.     HP states that "Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC" and the "Patent Statement and Licensing Declaration Form" speak for themselves and denies the allegations in Paragraph 33 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33, and therefore denies them.

6

34.     HP states that "ITU-T Recommendation H.264" ("the H.264 Standard") speaks for itself and denies the allegations in Paragraph 34 to the extent inconsistent therewith.

35.     HP states that "ITU-T Recommendation H.265" ("the H.265 Standard") speaks for itself and denies the allegations in Paragraph 35 to the extent inconsistent therewith.

**B.      Nokia's Compliance with the ITU Common Patent Policy and Nokia's Relevant Declarations**

36.     HP denies that Nokia has established that claims of the Asserted Patents are essential for compliance with the H.264 and H.265 Standards. HP admits that Nokia has submitted declarations that its patent portfolio includes claims essential to decoding video according to the H.264 and/or H.265 Standards. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36, and therefore denies them.

37.     HP admits that Nokia has filed declarations in which it committed that it is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of the H.264 and/or H.265 Standard, subject to reciprocity. HP otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 37, and therefore denies them.

38.     HP admits that Nokia Corporation submitted Patent Statement and Licensing Declarations to the ITU, which speak for themselves.  HP denies that these declarations were timely submitted and denies that Nokia complied with the ITU Common Patent Policy. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 38, and therefore denies them.

C.      **Nokia's Negotiations with HP**

39.     HP admits Nokia has been negotiating with HP since 2019 regarding patents that Nokia contends are essential to the H.264 and H.265 Standards, and that the parties have not reached an agreement. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 39 that "Nokia made offers to HP consistent with licenses agreed to by over 50 companies," and therefore denies it. The remaining allegations of Paragraph 39 are denied.

40.     HP admits that Nokia contacted HP in November 2019 regarding patents that Nokia contends are related to the H.264 standard. HP admits that Nokia proposed that the parties enter into a non-disclosure agreement. HP admits that Nokia delivered a presentation to HP on March 12, 2020, which speaks for itself. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40, and therefore denies them.

41.     HP admits that on July 22, 2020, Nokia sent documentation to HP. The documents speak for themselves, and HP denies the allegations in Paragraph 41 to the extent inconsistent therewith. HP denies that any of its products are infringing products. The remaining allegations in Paragraph 41 are denied.

42.     HP admits that it executed an NDA with Nokia on December 8, 2020. HP admits that after the execution of the NDA, Nokia sent HP a license offer, terms and conditions, and requested a call.  Those documents speak for themselves, and HP denies the allegations in Paragraph 42 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42, and therefore denies them.

43.     HP admits that representatives of the parties spoke by phone on January 15, 2021. HP admits that, thereafter, Nokia provided additional documentation to HP. Those documents speak for themselves, and HP denies the allegations in Paragraph 43 to the extent inconsistent therewith. Otherwise, denied.

44.     HP admits that on May 13, 2021, Nokia sent additional documentation and license offers to HP. Those documents speak for themselves, and HP denies the allegations in Paragraph 44 to the extent inconsistent therewith. Otherwise, denied.

45.     HP admits that on July 9, 2021, Nokia sent additional documentation to HP. Those documents speak for themselves, and HP denies the allegations in Paragraph 45 to the extent inconsistent therewith. Otherwise, denied.

46.     HP admits that on August 13, 2021, Nokia extended offers to HP for patents that Nokia contends relate to encoding video into H.265-compliant formats and decoding H.265-compliant video at different rates. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46, and therefore denies them.

47.     HP denies that it infringes or has infringed Nokia's Asserted Patents. HP admits that on August 27, September 28 and October 1, 2021, Nokia sent additional documentation to HP. Those documents speak for themselves, and HP denies the allegations in Paragraph 47 to the extent inconsistent therewith.

48.     HP admits that between January and March 2022, the parties met seven times and engaged in discussions about Nokia's patents. HP admits that, thereafter, Nokia sent HP a lump sum offer for Nokia patent claims. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48, and therefore denies them.

49.     HP admits that it has not accepted Nokia's offers. HP also admits it has not paid Nokia a royalty. Otherwise, denied.

50.     Denied.

## THE NOKIA ASSERTED PATENTS

51.     HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, and therefore denies them. To the extent the allegations in Paragraph 51 are conclusions of law, no response is required, and they are therefore deemed denied.

**A.      U.S. Patent No. 7,532,808 ("the '808 Patent")**

52.     Admitted.

53.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 53 to the extent inconsistent therewith. Otherwise, denied.

54.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 54 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54, and therefore denies them.

55.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 55 to the extent inconsistent therewith.

56.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 56 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 56, and therefore denies them.

57.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 57 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies them.

58.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 58 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and therefore denies them.

59.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 59 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, and therefore denies them.

60.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 60 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60, and therefore denies them.

61.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 61 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61, and therefore denies them.

62.     The '808 Patent speaks for itself, and HP denies the allegations in Paragraph 62 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62, and therefore denies them.

63.     Denied.

64.     Denied.

65.     Denied.

66.     HP admits that it sells laptops with graphics processing units that decode H.264-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

67.     Denied.

68.     HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 68 to the extent inconsistent therewith.

69.     HP admits that it sells desktop computers with graphics processing units that decode H.264-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

70.     HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 70 to the extent inconsistent therewith.

71.     Denied.

72.     HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

73.     HP admits that it was aware of the '808 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided a claim chart in July 2020 that included the '808 Patent. Otherwise, denied.

74.     Denied.

75.     HP admits that the H.264 Standard can be found in Exhibit 1 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 12. HP otherwise denies the allegations of Paragraph 75, including any allegations of infringement.

**B.      U.S. Patent No. 8,204,134 ("the '134 Patent")**

76.     Admitted.

77.     The '134 Patent speaks for itself, and HP denies the allegations in Paragraph 77 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 77, and therefore denies them.

78.     The '134 Patent speaks for itself, and HP denies the allegations in Paragraph 78 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78, and therefore denies them.

79.     The '134 Patent speaks for itself, and HP denies the allegations in Paragraph 79 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79, and therefore denies them.

80.     The '134 Patent speaks for itself, and HP denies the allegations in Paragraph 80 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 80, and therefore denies them.

81.     The '134 Patent speaks for itself, and HP denies the allegations in Paragraph 81 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81, and therefore denies them.

82.     Denied.

83.     Denied.

84.     HP admits that it sells laptops with graphics processing units that decode H.264-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

85.     Denied.

86.     HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 86 to the extent inconsistent therewith.

87.     HP admits that it sells desktop computers with graphics processing units that decode H.264-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

88.     HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 88 to the extent inconsistent therewith.

89.     Denied.

90.     HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

91.     HP admits that it was aware of the '134 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided claim charts in July 2020 and May 2021 that included the '134 Patent. Otherwise, denied.

92.     Denied.

93.     HP admits that the H.264 Standard can be found in Exhibit 1 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 13. HP otherwise denies the allegations of Paragraph 93, including any allegations of infringement.

**C.      U.S. Patent No. 7,724,818 ("the '818 Patent")**

94.     Admitted.

14

95.     The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 95 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95, and therefore denies them.

96.     The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 96 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 96, and therefore denies them.

97.     The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 97 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 97, and therefore denies them.

98.     The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 98 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 98, and therefore denies them.

99.     The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 99 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 99, and therefore denies them.

100.    The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 100 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 100, and therefore denies them.

101.    The '818 Patent speaks for itself, and HP denies the allegations in Paragraph 101 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 101, and therefore denies them.

102.    Denied.

103.    Denied.

104. Denied.

105. HP admits that it sells laptops with graphics processing units that decode H.264- and H.265-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

106. Denied.

107. HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 107 to the extent inconsistent therewith.

108. HP admits that it sells desktop computers with graphics processing units that decode H.264- and H.265-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

109. HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 109 to the extent inconsistent therewith.

110. Denied.

111. HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

112. HP admits that it was aware of the '818 Patent as of the filing of the Complaint in this action. Otherwise, denied.

113.    HP admits that it was aware of the '818 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided claim charts in July 2020 and July 2021 that included the '818 Patent. Otherwise, denied.

114.    Denied.

115.    HP admits that the H.264 and H.265 Standards can be found in Exhibits 1 and 2 to the Complaint. HP admits that the Complaint attaches claim charts as Exhibits 14A and 14B. HP otherwise denies the allegations of Paragraph 115, including any allegations of infringement.

**D.      U.S. Patent No. 10,536,714 ("the '714 Patent")**

116.    Admitted.

117.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 117 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 117, and therefore denies them.

118.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 118 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 118, and therefore denies them.

119.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 119 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119, and therefore denies them.

120.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 120 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 120, and therefore denies them.

121.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 121 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 121, and therefore denies them.

122.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 122 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 122, and therefore denies them.

123.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 123 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 123, and therefore denies them.

124.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 124 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 124, and therefore denies them.

125.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 125 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 125, and therefore denies them.

126.    The '714 Patent speaks for itself, and HP denies the allegations in Paragraph 126 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 126, and therefore denies them.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    HP admits that it sells laptops with graphics processing units that decode H.265-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

132.    Denied.

133.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 133 to the extent inconsistent therewith.

134.    HP admits that it sells desktop computers with graphics processing units that decode H.265-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

135.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 135 to the extent inconsistent therewith.

136.    Denied.

137.    HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

138.    HP admits that it was aware of the '714 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided a claim chart in July 2021 that included the '714 Patent. Otherwise, denied.

139.    Denied.

19

140.     HP admits that the H.265 Standard can be found in Exhibit 2 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 15. HP otherwise denies the allegations of Paragraph 140, including any allegations of infringement.

**E.     U.S. Patent No. 11,805,267 ("the '267 Patent")**

141.     Admitted.

142.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 142 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 142, and therefore denies them.

143.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 143 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 143, and therefore denies them.

144.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 144 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 144, and therefore denies them.

145.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 145 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 145, and therefore denies them.

146.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 146 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 146, and therefore denies them.

147.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 147 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 147, and therefore denies them.

148.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 148 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 148, and therefore denies them.

149.     The '267 Patent speaks for itself, and HP denies the allegations in Paragraph 149 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 149, and therefore denies them.

150.     Denied.

151.     Denied.

152.     Denied.

153.     Denied.

154.     HP admits that it sells laptops with graphics processing units that decode H.265-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

155.     Denied.

156.     HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 156 to the extent inconsistent therewith.

157.     HP admits that it sells desktop computers with graphics processing units that decode H.265-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

158.   HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 158 to the extent inconsistent therewith.

159.   Denied.

160.   HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

161.   HP admits that it was aware of the '267 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided a claim chart in July 2021 that included the '267 Patent. Otherwise, denied.

162.   Denied.

163.   HP admits that the H.265 Standard can be found in Exhibit 2 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 19. HP otherwise denies the allegations of Paragraph 163, including any allegations of infringement.

### F.   U.S. Patent No. 8,077,991 ("the '991 Patent")

164.   Admitted.

165.   The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 165 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 165, and therefore denies them.

166.   The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 166 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 166, and therefore denies them.

167.    The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 167 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 167, and therefore denies them.

168.    The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 168 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 168, and therefore denies them.

169.    The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 169 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 169, and therefore denies them.

170.    The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 170 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 170, and therefore denies them.

171.    The '991 Patent speaks for itself, and HP denies the allegations in Paragraph 171 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 171, and therefore denies them.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    HP admits that it sells laptops with graphics processing units that decode H.265-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

177.    Denied.

178.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 178 to the extent inconsistent therewith.

179.    HP admits that it sells desktop computers with graphics processing units that decode H.265-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

180.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 180 to the extent inconsistent therewith.

181.    Denied.

182.    HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

183.    HP admits that it was aware of the '991 Patent as of the filing of the Complaint in this action. Otherwise, denied.

184.    Denied.

185.    HP admits that the H.265 Standard can be found in Exhibit 2 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 16. HP otherwise denies the allegations of Paragraph 185, including any allegations of infringement.

**G.    U.S. Patent No. 8,050,321 ("the '321 Patent")**

186.    Admitted.

24

187.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 187 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 187, and therefore denies them.

188.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 188 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 188, and therefore denies them.

189.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 189 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189, and therefore denies them.

190.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 190 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 190, and therefore denies them.

191.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 191 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 191, and therefore denies them.

192.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 192 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192, and therefore denies them.

193.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 193 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 193, and therefore denies them.

194.    The '321 Patent speaks for itself, and HP denies the allegations in Paragraph 194 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 194, and therefore denies them.

195.    Denied.

196.    Denied.

197.    Denied.

198.    Denied.

199.    HP admits that it sells laptops with graphics processing units that decode H.264- and H.265-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

200.    Denied.

201.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 201 to the extent inconsistent therewith.

202.    HP admits that it sells desktop computers with graphics processing units that decode H.264- and H.265-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

203.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 203 to the extent inconsistent therewith.

204.    Denied.

205.    HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

206.    HP admits that it was aware of the '321 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided claim charts in May 2021 and March 2022 that included the '321 Patent. Otherwise, denied.

207.    Denied.

208.    HP admits that the H.264 and H.265 Standards can be found in Exhibits 1 and 2 to the Complaint. HP admits that the Complaint attaches claim charts as Exhibits 17A and 17B. HP otherwise denies the allegations of Paragraph 208, including any allegations of infringement.

**H.    U.S. Patent No. 6,950,469 ("the '469 Patent")**

209.    Admitted.

210.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 210 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 210, and therefore denies them.

211.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 211 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 211, and therefore denies them.

212.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 212 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 212, and therefore denies them.

213.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 213 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 213, and therefore denies them.

214.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 214 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 214, and therefore denies them.

215.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 215 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 215, and therefore denies them.

216.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 216 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 216, and therefore denies them.

217.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 217 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 217, and therefore denies them.

218.    The '469 Patent speaks for itself, and HP denies the allegations in Paragraph 218 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 218, and therefore denies them.

219.    Denied.

220.    Denied.

221.    Denied.

222.    HP admits that it sells laptops with graphics processing units that decode H.264-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris

XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

223.    Denied.

224.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 224 to the extent inconsistent therewith.

225.    HP admits that it sells desktop computers with graphics processing units that decode H.264-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

226.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 226 to the extent inconsistent therewith.

227.    Denied.

228.    HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

229.    HP admits that it was aware of the '469 Patent as of the filing of the Complaint in this action. HP admits that Nokia provided a claim chart in July 2020 that included the '469 Patent. Otherwise, denied.

230.    Denied.

231.     HP admits that the H.264 Standard can be found in Exhibit 1 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 18. HP otherwise denies the allegations of Paragraph 231, including any allegations of infringement.

**I.      U.S. Patent No. 7,280,599 ("the '599 Patent")**

232.     Admitted.

233.     The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 233 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 233, and therefore denies them.

234.     The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 234 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 234, and therefore denies them.

235.     The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 235 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 235, and therefore denies them.

236.     The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 236 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 236, and therefore denies them.

237.     The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 237 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 237, and therefore denies them.

238.     The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 238 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 238, and therefore denies them.

239.    The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 239 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 239, and therefore denies them.

240.    The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 240 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 240, and therefore denies them.

241.    The '599 Patent speaks for itself, and HP denies the allegations in Paragraph 241 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 241, and therefore denies them.

242.    Denied.

243.    Denied.

244.    Denied.

245.    HP admits that it sells laptops with graphics processing units that decode H.264-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

246.    Denied.

247.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 247 to the extent inconsistent therewith.

248.    HP admits that it sells desktop computers with graphics processing units that decode H.264-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that

certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

249.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 249 to the extent inconsistent therewith.

250.    Denied.

251.    HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

252.    Denied.

253.    Denied.

254.    HP admits that the H.264 Standard can be found in Exhibit 1 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 19. HP otherwise denies the allegations of Paragraph 254, including any allegations of infringement.

**J.     U.S. Patent No. 8,036,273 ("the '273 Patent")**

255.    Admitted.

256.    The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 256 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 256, and therefore denies them.

257.    The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 257 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 257, and therefore denies them.

258.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 258 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 258, and therefore denies them.

259.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 259 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 259, and therefore denies them.

260.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 260 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 260, and therefore denies them.

261.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 261 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 261, and therefore denies them.

262.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 262 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 262, and therefore denies them.

263.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 263 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 263, and therefore denies them.

264.     The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 264 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 264, and therefore denies them.

265.    The '273 Patent speaks for itself, and HP denies the allegations in Paragraph 265 to the extent inconsistent therewith. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 265, and therefore denies them.

266.    Denied.

267.    Denied.

268.    Denied.

269.    HP admits that it sells laptops with graphics processing units that decode H.264-compliant video, including the HP Spectre X360 laptop series, which includes an Intel Iris XE Graphics Processor. HP admits that certain information regarding these products can be found on the www.hp.com and www.intel.com websites. Otherwise, denied.

270.    Denied.

271.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 271 to the extent inconsistent therewith.

272.    HP admits that it sells desktop computers with graphics processing units that decode H.264-compliant video, including the HP Pavilion Series of Desktop PC, which includes either an Intel UHD Graphics 770 or an AMD Radeon Graphics processor. HP admits that certain information regarding these products can be found on the www.hp.com, www.intel.com, and www.amd.com websites. Otherwise, denied.

273.    HP admits that it publishes reviews of some of its products on the www.hp.com website. The contents of those reviews speak for themselves, and HP denies the allegations in Paragraph 273 to the extent inconsistent therewith.

274.    Denied.

275.     HP admits that it advertises some of its Accused Products on its website for consumer purchase. Otherwise, denied.

276.     Denied.

277.     Denied.

278.     HP admits that the H.264 Standard can be found in Exhibit 1 to the Complaint. HP admits that the Complaint attaches a claim chart as Exhibit 20. HP otherwise denies the allegations of Paragraph 278, including any allegations of infringement.

### COUNT I: PATENT INFRINGEMENT OF THE '808 PATENT

279.     HP incorporates by reference its responses to Paragraphs 1 through 278 as if fully set forth herein.

280.     HP admits it received notice of the '808 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP. Otherwise, Denied.

281.     Denied.

282.     Denied.

283.     Denied.

284.     Denied.

285.     HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

286.     Denied.

### COUNT II: PATENT INFRINGEMENT OF THE '134 PATENT

287.     HP incorporates by reference its responses to Paragraphs 1 through 286 as if fully set forth herein.

288.    HP admits it received notice of the '134 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP. Otherwise, denied.

289.    Denied.

290.    Denied.

291.    Denied.

292.    Denied.

293.    HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

294.    Denied.

### COUNT III: PATENT INFRINGEMENT OF THE '818 PATENT

295.    HP incorporates by reference its responses to Paragraphs 1 through 294 as if fully set forth herein.

296.    HP admits it received notice of the '818 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP. Otherwise, denied.

297.    Denied.

298.    Denied.

299.    Denied.

300.    Denied.

301.    HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

302.    Denied.

## COUNT IV: PATENT INFRINGEMENT OF THE '714 PATENT

303.    HP incorporates by reference its responses to Paragraphs 1 through 302 as if fully set forth herein.

304.    HP admits it received notice of the '714 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP. Otherwise, denied.

305.    Denied.

306.    Denied.

307.    Denied.

308.    Denied.

309.    HP admits that HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

310.    Denied.

## COUNT V: PATENT INFRINGEMENT OF THE '267 PATENT

311.    HP incorporates by reference its responses to Paragraphs 1 through 310 as if fully set forth herein.

312.    Denied.

313.    HP admits it received notice of the '267 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP.

314.    Denied.

315.    Denied.

316.    Denied.

317.    Denied.

318. HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

319. Denied.

## COUNT VI: PATENT INFRINGEMENT OF THE '991 PATENT

320. HP incorporates by reference its responses to Paragraphs 1 through 319 as if fully set forth herein.

321. admits it received notice of the '991 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP.

322. Denied.

323. Denied.

324. Denied.

325. Denied.

326. HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

327. Denied.

## COUNT VII: PATENT INFRINGEMENT OF THE '321 PATENT

328. HP incorporates by reference its responses to Paragraphs 1 through 327 as if fully set forth herein.

329. HP admits it received notice of the '321 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP.

330. Denied.

331. Denied.

332. Denied.

333. Denied.

334. HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

335. Denied.

## COUNT VIII: PATENT INFRINGEMENT OF THE '469 PATENT

336. HP incorporates by reference its responses to Paragraphs 1 through 335 as if fully set forth herein.

337. HP admits it received notice of the '469 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP.

338. Denied.

339. Denied.

340. Denied.

341. Denied.

342. HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

343. Denied.

## COUNT IX: PATENT INFRINGEMENT OF THE '599 PATENT

344. HP incorporates by reference its responses to Paragraphs 1 through 343 as if fully set forth herein.

345. HP admits that it received notice of the '599 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP.

346. Denied.

347. Denied.

348.   Denied.

349.   Denied.

350.   HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

351.   Denied.

## COUNT X: PATENT INFRINGEMENT OF THE '273 PATENT

352.   HP incorporates by reference its responses to Paragraphs 1 through 351 as if fully set forth herein.

353.   HP admits that it received notice of the '273 Patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon HP.

354.   Denied.

355.   Denied.

356.   Denied.

357.   Denied.

358.   HP admits that it derives revenue from sales of the Accused Products. Otherwise, denied.

359.   Denied.

## COUNT XI: DECLARATORY JUDGMENT THAT NOKIA HAS NEGOTIATED IN GOOD FAITH TOWARDS A LICENSE WITH HP AND COMPLIED WITH ITS RAND COMMITMENT

360.   HP incorporates by reference its responses to Paragraphs 1 through 359 as if fully set forth herein.

361.     HP admits that it designs, manufactures and markets products that utilize and implement one or more technical standards, such as the ITU H.264 and H.265 Standards. Otherwise, denied.

362.     HP admits that Nokia has declared to the ITU that it is prepared to grant licenses to its patent claims on a worldwide, non-discriminatory basis and on reasonable terms and conditions. HP denies that Nokia has established that its patents are essential for compliance with the H.264 and H.265 Standards. HP denies that Nokia has offered to license its Asserted Patents to HP on non-discriminatory and reasonable terms. HP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 362, and therefore denies them.

363.     HP admits that Nokia made certain of its engineers available to engage in technical discussions with HP representatives. Otherwise, denied.

364.     HP admits that a dispute exists between Nokia and HP concerning whether Nokia has negotiated in good faith towards a license with HP and complied with the ITU Common Patent Policy and Nokia's Patent Statement and Licensing Declarations, as well as applicable laws. To the extent the allegations in Paragraph 364 are conclusions of law, no response is required, and they are therefore deemed denied. Otherwise, denied.

365.     HP admits that Nokia purports to seek a declaration that Nokia has negotiated in good faith towards a license with HP and has complied with its obligations under the IT Common Patent Policy and Nokia's Patent Statement and Licensing Declarations. HP denies that Nokia has negotiated in good faith towards a license with HP and has complied with its obligations under the ITU Common Patent Policy and Nokia's Patent Statement and Licensing Declarations.

## COUNT XII: BREACH OF HP'S OBLIGATION TO NEGOTIATE IN GOOD FAITH TOWARDS A LICENSE WITH NOKIA

366.    HP incorporates by reference its responses to Paragraphs 1 through 365 as if fully set forth herein.

367.    To the extent the allegations in Paragraph 367 are conclusions of law, no response is required, and they are therefore deemed denied. Otherwise, denied.

368.    HP admits that it disputes that it has an obligation to take a license to the Asserted Patents. To the extent the allegations in Paragraph 368 are conclusions of law, no response is required, and they are therefore deemed denied. Otherwise, denied.

369.    Denied.

370.    HP admits that Nokia purports to request an award of damages as stated in Paragraph 370. HP denies that Nokia is entitled to any damages.

## ATTORNEYS' FEES

371.    Denied.

## PRAYER FOR RELIEF

The remainder of the Complaint recites a prayer for relief for which no response is required. To the extent any response is required, HP denies that Nokia has any valid cause of action, and specifically denies all of Nokia's allegations of infringement. HP further denies that Nokia is entitled to any of the requested relief.

## HP'S DEFENSES TO NOKIA'S COMPLAINT

Without any admission as to the burden of proof, burden of persuasion, or truth of any allegation in the Complaint, HP alleges and asserts the following defenses in response to the allegations above, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

42

## FIRST DEFENSE

### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

### (Noninfringement)

HP has not and does not infringe, contribute to the infringement, and/or induce the infringement of any valid and enforceable claim of the Asserted Patents, either literally or under the doctrine of equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

## THIRD DEFENSE

### (Invalidity)

The claims of the Asserted Patents are invalid for failure to comply with the statutory provisions of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, and 116, 132 and/or 156.

## FOURTH DEFENSE

### (Unenforceability)

The Asserted Patents unenforceable against HP on one or more of the following grounds: estoppel, waiver, unclean hands, patent exhaustion, license/covenants not to assert, implied license/covenants not to assert, exhaustion, breach of contract, and/or other contractual or equitable doctrines.

**FIFTH DEFENSE**

**(Bar to Damages)**

Nokia's claims for damages are barred, in whole or in part, under 35 U.S.C. §§ 286 and

287.

**SIXTH DEFENSE**

**(No Equitable Relief)**

On information and belief, Nokia is not entitled to equitable relief with respect to the

Asserted Patents under any theory because Nokia has not and will not suffer irreparable harm;

Nokia is not without an adequate remedy at law; the balance of the hardships do not favor entry

of an injunction; and/or public policy concerns weigh against any equitable relief.

**SEVENTH DEFENSE**

**(No Exceptional Case)**

Nokia cannot prove that this is an exceptional case justifying award of attorney fees

against HP pursuant to 35 U.S.C. § 285.

**RESERVATION OF DEFENSES**

HP reserves any and all additional defenses available under Section 35 of the United

States Code, the rules, regulations, or laws related thereto, the Federal Rules of Civil Procedure,

the Rules of this Court, and/or otherwise in law or equity, now existing, or later arising, as may

be discovered.

**<u>COUNTERCLAIMS</u>**

Counterclaim Plaintiff HP Inc. ("HP") for its counterclaims against

Plaintiff/Counterclaim Defendant Nokia Technologies Oy ("Nokia") declares as follows:

1.      HP brings these counterclaims based on Nokia's refusal to offer a license to its alleged standard-essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions, breaching its contractual obligations made through its, and/or its parent's (Nokia Corporation's) participation and membership in the International Telecommunication Union ("ITU").

2.      HP has been and remains a willing licensee for patents that are actually essential to the H.264 and/or H.265 Standards (collectively, the "Asserted Standards") and are actually practiced by HP. Since 2019, HP has acted in good faith and engaged in substantive negotiations with Nokia over its portfolio of purported SEPs. But while HP was a willing licensee and participated in negotiations in good faith, Nokia repeatedly engaged in bad-faith negotiations and gamesmanship in a blatant attempt to extract royalty payments far exceeding FRAND terms for Nokia's declared SEPs.

3.      During the parties' negotiations over a worldwide license for Nokia's portfolio of worldwide patents alleged to be SEPs, Nokia made offers to HP, but each offer greatly exceeded a FRAND-compliant rate. To be clear, Nokia has yet to offer HP a license to its patents at a FRAND-compliant rate.

4.      After HP did not give in to Nokia's coercion and inflated license demands, Nokia failed to respond to HP's August 2022 request to discuss Nokia's patents that it contends cover the Asserted Standards, then—without warning—sued HP in this Court on October 31, 2023. Nokia also sued HP twice in the U.S. International Trade Commission (where it is seeking exclusion orders), in the Unified Patent Court in Germany (a jurisdiction in which it has sought injunctions over SEPs in prior cases), and sought and obtained an *ex parte* preliminary injunction in Brazil. Nokia's aggressive litigation tactics, particularly targeting jurisdictions where it can

seek injunctive relief (including an *ex parte* preliminary injunction) for SEPs, confirms it is not negotiating in good faith, but instead attempting to pressure HP into agreeing to pay royalties for its global portfolio that exceed a FRAND rate.

5.  Nokia's conduct and demands for unreasonable royalties violate its FRAND obligations for multiple reasons, including, without limitation:

> a.  Seeking grossly excessive or supra-competitive royalties from HP for a license to its Asserted Patents and other alleged SEPs that reflect the value of the standard as a whole, rather than the *ex ante* value of the alleged inventions;
>
> b.  Refusing to negotiate in good faith, including unilaterally withdrawing without explanation from negotiations; and
>
> c.  Requesting injunctive relief in international courts in an attempt to gain additional leverage against HP and obtain excessive royalties that are not FRAND-compliant.

6.  In addition to Nokia repeatedly refusing to provide a FRAND-compliant offer, Nokia has violated the ITU's Intellectual Property Rights ("IPR") guidelines and rules. More particularly, Nokia purports to own patents that are essential to the Asserted Standards. Compl., ¶¶ 65, 83, 104, 130, 153, 175, 198, 221, 244, 268. But Nokia and Nokia Corporation did not timely declare certain Asserted Patents as essential to the Asserted Standards, despite its awareness of its disclosure obligations and its allegations here. Rather, while it was actively participating in standard-setting meetings advocating for technical positions, Nokia Corporation withheld such declarations until years after it purportedly invented the subject matter of those patents, the subject matter was presented to the ITU for consideration and inclusion in the standards, and the subject matter of the patents was adopted into the standards—thereby "locking

in" the technology into the Asserted Standards and preventing the ITU participants from adopting alternative technology/ies that would be available at FRAND rates or on a royalty-free basis from other SEP owners.

## THE PARTIES

7.      Defendant/Counterclaim Plaintiff HP is a Delaware corporation with its principal place of business at 1501 Page Mill Road, Palo Alto, CA 94304-1112.

8.      According to its Complaint, Plaintiff/Counterclaim Defendant Nokia is a foreign corporation organized under the laws of Finland, with its principal place of business at Karakaari 7, FIN-02610, Espoo, Finland. Nokia is a wholly owned subsidiary of Nokia Corporation ("Nokia Corporation").

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over HP's Counterclaims under 28 U.S.C. §§ 1331, 1332, 1367, 2201, and/or 2202.

10.     This Court has original jurisdiction over HP's Counterclaims pursuant to 28 U.S.C. § 1332 because Nokia is a foreign corporation, HP is a Delaware corporation, and the value of the matter in controversy exceeds $75,000.

11.     An actual controversy exists under the Declaratory Judgment Act, because Nokia has asserted and is asserting infringement of U.S. Patent Nos. 6,950,469; 7,280,599; 7,532,808; 7,724,818; 7,724,818; 8,036,273; 8,050,321; 8,077,991; 8,204,134; 10,536,714; 11,805,267 by HP.

12.     This Court also has supplemental jurisdiction over its state law claims pursuant to 28 U.S.C. § 1367(a) because HP's state law Counterclaims form part of the same case or controversy as the federal claims.

13.     This Court has personal jurisdiction over Nokia at least by virtue of Nokia's consent to the personal jurisdiction of this Court by filing of the Complaint against HP in this Court.

14.     For the purposes of the Counterclaims set forth herein, and without waiving any defense of lack of venue or improper venue in connection with Nokia's Complaint and causes of action, venue is proper in this District pursuant to 28 U.S.C. § 1391, at least because Nokia has submitted to personal jurisdiction in this Court and has consented to this venue by filing its Complaint here.

**STANDARD SETTING ORGANIZATIONS AND STANDARDS DEVELOPMENT**

15.     Standards-setting organizations ("SSOs") develop, institute, and disseminate technical standards and specifications in various industries, which encourage innovation, cooperation, and technical advancement. Technical standards allow a product produced by one manufacturer to connect and interoperate with a product produced by another manufacturer, when both products support the same standard. For maximum interoperability, technical standards frequently are published publicly and are widely available to the public.

16.     SSOs oversee the process of the creation and development of technical standards. SSO members, including technology companies and industry professionals, submit proposals of new technological ideas for consideration, which are discussed and evaluated by SSO members. SSO members agree to adopt (or "freeze") certain proposals for inclusion in the standard. Oftentimes, multiple individuals or companies submit competing proposals on the same subject matter, including different concepts or approaches, and SSO members advocate for one approach over another. For this reason, many proposals are not frozen into the standard and are rejected,

whereas some proposals are adopted once modified. Even within the same standard, the standard evolves over time as new proposals are adopted and new versions of the standard are created.

17.     Standards increase competition among suppliers and lead to improved products for consumers. When participants in the standardization process have patent rights related to the technology incorporated within the standard, however, an increased likelihood exists that the patent owner can demand higher royalties that reflect the invention's inclusion in the standard rather than the value attributable to the patented technology itself. More particularly, before standardization, technology suppliers compete with other suppliers that offer similar functionality, and the royalties a patent owner can demand for its technology is constrained by two factors: the value of the invention itself and alternative technical approaches. But after standardization, former alternatives to perform the standardization functions are often no longer viable substitutes for those practicing the standard, and thus no longer constrain royalties in this way. This is called "lock-in" because any implementer of the standard must practice the SEPs by practicing the standard. Patents give their owners the right to exclude others from making, using, or selling products that infringe the patent claims. But because SEPs are essential to practice the standard, SEP owners can seek to exclude implementers from practicing the *entire standard*— not merely the claimed invention—or demand supra-competitive royalties not tied to the value of the actual *ex ante* value of the invention. This practice is known as "hold-up."

18.     To combat the potential for "hold up" by SEP owners, SSOs have adopted rules, policies, procedures, and practices that are aimed squarely at reducing the ability of n SEP owner from applying abusive and anticompetitive practices. These rules and policies are usually set forth in the guidelines, rules, or IPR policies of SSOs, are agreed to by SSO members, and constitute contractual commitments between the SSO members and the SSO. Implementers of

the standard, regardless of whether the implementers are members of the SSO, are third-party beneficiaries of the binding contractual obligations between the SEP owner and the SSO.

19.     While SSO policies differ by organization, they frequently include IPR policies, which generally include requirements concerning, *inter alia*:  the prompt disclosure of members' IPR, including any IPR that may be included in a technical proposal or that may be incorporated into the specification of the standard in development, and the commitment by SEP owners to licensing these IPR on FRAND terms and conditions.

20.     More specifically, one key aspect of IPR policies frequently requires SSO members and standards development participants to timely disclose proposals that might be covered, claimed by, or otherwise implicate patent rights (issued patents or pending patent applications). These rules thus allow SSO standards development participants to consider both the technical merit of the proposal as well as the potential implications of incorporating technology into the standard that is encumbered by IPR. Of note, SSOs generally require that participants disclose to other SSO members whether a proposal is encumbered by patent rights *before* the proposal is adopted into the standard so that members can evaluate the full merits of the proposal, not just the technical aspects. Absent early disclosure of IPR rights, a SEP owner and SSO member can surreptitiously introduce patented technology into the standard and lock-in implementers of the standard.

21.     SSOs also usually obligate their members to grant irrevocable licenses to essential patents on FRAND or royalty-free terms and conditions. This prevents a SEP owner from charging implementers unreasonable royalties that are based on the patented invention's inclusion in the standard rather than the value of the patented invention itself. This further limits a SEP owner's ability to create an unfair and overly broad monopoly based on a SEP's

essentiality to the standard. These binding contractual obligations bind the original declarant, along with any subsequent owner or assignee of that declared-essential patent. But SSOs do not determine whether these declared SEPs are actually SEPs; rather, it is left to the courts to determine whether declared, purported SEPs are actually SEPs.

## ITU'S COMMON PATENT POLICY AND GUIDELINES CONCERNING INTELLECTUAL PROPERTY RIGHTS

22.     As relevant to this dispute, the International Telecommunication Union is a Switzerland-based SSO composed of three sectors. The ITU's telecommunications sector, ITU-T, oversees the development of international standards related to information and communication technologies.

23.     At all times relevant to these proceedings, including today, Nokia Corporation was and is an active member of ITU-T. As an active member, Nokia Corporation and its patent assignees, including Plaintiff/Counterclaim Defendant Nokia Technologies Oy, were and are contractually bound by the ITU-T's Common Patent Policy, of which Nokia is aware. *See, e.g.*, Compl., ¶¶ 30-38; Ex. A (Common Patent Policy, available at https://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx).

24.     Under the Common Patent Policy, any ITU-T member participating in the standards setting process should, "from the outset," notify the Organization of any known related patents or pending patent applications, either their own or that of a third party. Ex. A at 1. The Common Patent Policy further states that "it is desirable that the ***fullest available information*** should be disclosed." *Id.* (emphasis added).

25.     The ITU's Guidelines for Implementation of the Common Patent Policy ("ITU-T Guidelines") provide additional clarification and detail. Ex. B (ITU-T Guidelines, available at https://www.itu.int/dms_pub/itu-t/oth/04/04/T04040000010006PDFE.pdf). More specifically,

the ITU-T Guidelines clarify that "from the outset" means "as early as possible"; i.e., as it becomes clear that a standard recommendation will include elements covered by the patent holder's patent. *Id.* at 2. As the ITU-T Guidelines' statement of purpose indicates, early patent disclosure creates efficiency in the standard-setting process.

26.     When a standard recommendation is in development, and a member has notified the ITU-T of related patents, the patent holder has three options: (1) the patent holder may indicate they are willing to negotiate licenses without monetary compensation with other parties on reasonable non-discriminatory terms and conditions; (2) the patent holder may indicate they are willing to negotiate licenses on reasonable non-discriminatory terms and conditions; or (3) the patent holder may indicate that are unwilling to license the patent on non-discriminatory terms and conditions. Ex. A at 1. The ITU-T Guidelines further state that "if the Patent Holder is unwilling to license [its SEPs] under paragraph 2.1 or 2.2 of the Patent Policy, the Organizations will promptly advise the Technical Bodies responsible for the affected Recommendation | Deliverable so that appropriate action can be taken," including "a review of the Recommendation | Deliverable or its draft in order to remove the potential conflict or to further examine and clarify the technical considerations causing the conflict." Ex. B at 3. Thus, if a patent holder indicates its unwillingness to grant a license on FRAND terms under option 3, the SSO may elect not to include that patent holder's contribution in the standard.

27.     To properly disclose IPR, a patent holder must provide a written statement to ITU-T using the "Patent Statement and Licensing Declaration" form, either declaring their willingness or unwillingness to license their patented technology or technology covered by a pending application. Ex. B at 2, Annex 2. The statement may not include additional provisions or conditions beyond what is provided on the declaration form. By filing the licensing declaration

form and choosing either option 1 or 2, a patent holder signals a willingness to negotiate with potential licensees on non-discriminatory terms and conditions.

## NOKIA'S NON-DISCLOSURE AND/OR DELAYED DISCLOSURE OF IPR DURING THE STANDARD-SETTING PROCESS

28.    Despite its involvement in developing both the H.264 and H.265 Standards, and despite being bound by the ITU's Patent Policy, Nokia Corporation repeatedly failed to disclose during development of the H.264 and H.265 Standards that it had rights in the Asserted Patents that Nokia Corporation and Nokia have since claimed are essential to practice those Standards. Indeed, Nokia Corporation did not notify the ITU about any of the Asserted Patents until long after the first iteration of the H.264 Standard was frozen and then published in May 2003, or until long after the first iteration of the H.265 Standard was frozen and then published in April 2013.

29.    Upon information and belief, Nokia Corporation withheld its patents to induce JVT/ITU members to incorporate technology it believed was covered by its patents into the H.264 and H.265 Standards—but without providing those members with the ability to consider those alleged patent rights before the H.264 and H.265 Standards were frozen. If Nokia Corporation had satisfied its contractual obligations and timely disclosed its rights in the Asserted Patents, the JVT/ITU may have been able to adopt alternative technologies or decline to include the relevant functionality in the final standard. By failing to disclose its rights in the Asserted Patents before the H.264 and H.265 Standards were frozen, Nokia deprived members of the JVT/ITU of the ability to consider those options and has harmed HP and others who have since implemented the H.264 and H.265 Standards.

30.    Members of the ITU and other third-party beneficiaries of Nokia Corporation's obligations under the ITU Patent Policy reasonably expected Nokia Corporation to disclose its known patents and patent applications at the outset of the standardization process, not after

53

functionality allegedly covered by a patent or patent application was approved for incorporation into the H.264 and H.265 Standards and/or after the H.264 and H.265 Standards were frozen. If Nokia Corporation held or had applied for patents potentially essential to the H.264 and H.265 Standards, then under the binding contractual rules of the ITU Patent Policy, Nokia Corporation was obligated to disclose those patents from the outset, and at least before the H.264 and H.265 Standards were frozen.

31.     Nokia Corporation did not submit a Patent Statement and Licensing Declaration to the ITU specifically identifying any of the Asserted Patents (or the applications for those patents) as allegedly essential to any specific aspect of the H.264 or H.265 Standards before the standards were frozen, even though Nokia Corporation knew it possessed those patent rights during development of the H.264 and H.265 Standards, as detailed below.

32.     Indeed, Nokia Corporation did not disclose the existence of the Asserted Patents (and/or applications for those patents) during the H.264 and H.265 Standard-setting process, even while Nokia Corporation personnel (including named inventors of the Asserted Patents) participated in the relevant working groups that adopted the same technology that Nokia now claims is covered by the Asserted Patents, and even though participants at meetings were repeatedly reminded of the Patent Policy and their contractual obligation to disclose potentially essential patent rights.

33.     Under the ITU Patent Policy, Nokia Corporation had binding contractual commitments with the ITU, with ITU members, and with other SSOs participating in the H.264 and H.265 Standard development, all for the benefit of the SSOs, their members, and any entity involved in making, using, selling, offering for sale, and/or importing products that support the H.264 and H.265 Standards, including HP. Upon information and belief, all these entities

reasonably relied on the ITU's rules, including the ITU's Patent Policy, in supplying products that support the H.264 and H.265 Standards.

34.     HP has invested significant time and resources in connection with supplying products in reliance on the transparency of the ITU's standard-setting process and the requirement that H.264 and H.265 participants comply with the ITU's rules, including the ITU's Patent Policy requirement that members timely disclose during development of the H.264 and H.265 Standards any patent rights that might be essential.

35.     Nokia Corporation's standards-setting misconduct is not an isolated incident, as Nokia Corporation has a history of failing to timely disclose its allegedly essential patent rights to standards setting organizations. As just one example, the Federal Circuit determined in *Core Wireless Licensing S.A.R.L. v. Apple Inc.* that Nokia Corporation had a duty to disclose its allegedly essential patent rights before the relevant standard was frozen and breached that contractual obligation by waiting years after the standard was frozen to first do so. 899 F.3d 1356, 1368 (Fed. Cir. 2018).

## THE '134 PATENT

36.     U.S. Patent No. 8,204,134 ("the '134 patent") is titled "Grouping of image frames in video coding," and names Miska Hannuksela as inventor.

37.     Upon information and belief, the '134 patent is assigned to Nokia.

38.     As assignee of the '134 patent, which was assigned to Nokia Corporation during the development of the H.264 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '134 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '134 patent.

39.     The '134 patent was issued on June 19, 2012, from an application filed January 25, 2006, and claims priority to January 23, 2002.

40.     Nokia alleges that the '134 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

41.     Nokia Corporation declared the '134 patent essential to the H.264 Standard in an October 4, 2007 filing to the ITU-T. Ex. F at 4 (identifying U.S. Pub. No. 20060120464).

## THE '991 PATENT

42.     U.S. Patent No. 8,077,991 ("the '991 patent") is titled "Spatially enhanced transform coding," and names Jani Lainema as inventor.

43.     Upon information and belief, the '991 patent is assigned to Nokia.

44.     As assignee of the '991 patent, which was assigned to Nokia Corporation during the development of the H.265 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '991 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '991 patent.

45.     The '991 patent was issued on December 13, 2011, from an application filed April 10, 2008, and claims priority to April 12, 2007.

46.     Nokia alleges that the '991 patent is essential to material that has been included in the H.265 Standard since at least April 2013. Upon information and belief, the relevant functionality was proposed for inclusion into the H.265 Standard before April 2013 if it was considered and adopted into the standard by that time.

47.     Nokia Corporation declared the '991 patent essential to the H.265 Standard in a September 2, 2016 filing to the ITU-T. Ex. E at 2.

**THE '321 PATENT**

48.     U.S. Patent No. 8,050,321 ("the '321 patent") is titled "Grouping of image frames in video coding," and names Miska Hannuksela as inventor.

49.     Upon information and belief, the '321 patent is assigned to Nokia.

50.     As assignee of the '321 patent, which was assigned to Nokia Corporation during the development of the H.264 and H.265 Standards, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '321 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '321 patent.

51.     The '321 patent was issued on November 1, 2011, from an application filed January 25, 2006, and claims priority to January 23, 2002.

52.     Nokia alleges that the '321 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

53.     Nokia Corporation declared the '321 patent essential to the H.264 Standard in an October 4, 2007 filing to the ITU-T. Ex. F at 4 (identifying U.S. Pub. No. 20060120451).

54.     Nokia alleges that the '321 patent is essential to material that has been included in the H.265 Standard since at least April 2013, and that this material remains in current editions of the H.265 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.265 Standard before April 2013 if it was considered and adopted into the standard by that time.

55.     Nokia Corporation declared the '321 patent essential to the H.265 Standard in a June 11, 2013 filing to the ITU-T. Ex. D at 4.

**THE '273 PATENT**

56.     U.S. Patent No. 8,036,273 ("the '273 patent") is titled "Method for sub-pixel value interpolation," and names Marta Karczewicz and Antti Olli Hallapuro as inventors.

57.     Upon information and belief, the '273 patent is assigned to Nokia.

58.     As assignee of the '273 patent, which was assigned to Nokia Corporation during the development of the H.264 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '273 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '273 patent.

59.     The '273 patent was issued on October 11, 2011, from an application filed August 15, 2007, and claims priority to September 17, 2001.

60.     Nokia alleges that the '273 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

61.     Nokia Corporation declared the '273 patent essential to the H.264 Standard in a June 26, 2007 filing to the ITU-T. Ex. G at 3 (identifying the parent of the '273 patent, U.S. Patent. No. 6,950,469).

**THE '818 PATENT**

62.     U.S. Patent No. 7,724,818 ("the '818 patent") is titled "Method for coding sequences of pictures," and names Miska Hannuksela and Ye-kui Wang as inventors.

63.     Upon information and belief, the '818 patent is assigned to Nokia.

64.     As assignee of the '818 patent, which was assigned to Nokia Corporation during the development of the H.264 and H.265 Standards, Nokia is successor-in-interest to Nokia

Corporation's rights and obligations under the '818 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '818 patent.

65.     The '818 patent was issued on May 25, 2010, from an application filed April 30, 2003.

66.     Nokia alleges that the '818 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

67.     Nokia Corporation declared the '818 patent essential to the H.264 Standard in an October 11, 2010 filing to the ITU-T. Ex. H at 3.

68.     Nokia alleges that the '818 patent is essential to material that has been included in the H.265 Standard since at least April 2013, and that this material remains in current editions of the H.265 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.265 Standard before April 2013 if it was considered and adopted into the standard by that time.

69.     Nokia Corporation declared the '818 patent essential to the H.265 Standard in a June 11, 2013 filing to the ITU-T. Ex. D at 6.

**THE '808 PATENT**

70.     U.S. Patent No. 7,532,808 ("the '808 patent") is titled "Method for coding motion in a video sequence," and names Jani Lainema as inventor.

71.     Upon information and belief, the '808 patent is assigned to Nokia.

72.     As assignee of the '808 patent, which was assigned to Nokia Corporation during the development of the H.264 Standard, Nokia is successor-in-interest to Nokia Corporation's

rights and obligations under the '808 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '808 patent.

73.    The '808 patent was issued on May 12, 2009, from an application filed March 14, 2003, and claims priority to March 15, 2002.

74.    Nokia alleges that the '808 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

75.    Nokia Corporation declared the '808 patent essential to the H.264 Standard in a March 19, 2007 filing to the ITU-T. Ex. I at 3 (identifying U.S. Pub. No. 20030202594).

### THE '599 PATENT

76.    U.S. Patent No. 7,280,599 ("the '599 patent") is titled "Method for sub-pixel value interpolation," and names Marta Karczewicz and Antti Olli Hallapuro as inventors.

77.    Upon information and belief, the '599 patent is assigned to Nokia.

78.    As assignee of the '599 patent, which was assigned to Nokia Corporation during the development of the H.264 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '599 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '599 patent.

79.    The '599 patent was issued on October 9, 2007, from an application filed March 25, 2005, and claims priority to September 17, 2001.

80.    Nokia alleges that the '599 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for

inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

81.    Nokia Corporation declared the '599 patent essential to the H.264 Standard in a June 26, 2007 filing to the ITU-T. Ex. G at 3 (identifying U.S. Pub. No. 2005/0220353).

### THE '469 PATENT

82.    U.S. Patent No. 6,950,469 ("the '469 patent") is titled "Method for sub-pixel value interpolation," and names Marta Karczewicz and Antti Olli Hallapuro as inventors.

83.    Upon information and belief, the '469 patent is assigned to Nokia.

84.    As assignee of the '469 patent, which was assigned to Nokia Corporation during the development of the H.264 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '469 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '469 patent.

85.    The '469 patent was issued on September 27, 2005, from an application filed September 17, 2001.

86.    Nokia alleges that the '469 patent is essential to material that has been included in the H.264 Standard since at least May 2003, and that this material remains in current editions of the H.264 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.264 Standard before May 2003 if it was considered and adopted into the standard by that time.

87.    Nokia Corporation declared the '469 patent essential to the H.264 Standard in a June 26, 2007 filing to the ITU-T. Ex. G at 3.

### THE '267 PATENT

88.    U.S. Patent No. 11,805,267 ("the '267 patent") is titled "Motion prediction in video coding," and names Kemal Ugur, Jani Lainema, and Antti Hallapuro as inventors.

89.     Upon information and belief, the '267 patent is assigned to Nokia.

90.     As assignee of the '267 patent, which was assigned to Nokia Corporation during the development of the H.265 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '267 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '267 patent.

91.     The '267 patent was issued on October 31, 2023, from an application filed May 24, 2021, and claims priority to January 7, 2011.

92.     Nokia alleges that the '267 patent is essential to material that has been included in the H.265 Standard since at least April 2013, and that this material remains in current editions of the H.265 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.265 Standard before April 2013 if it was considered and adopted into the standard by that time.

93.     Nokia Corporation declared the '267 patent essential to the H.265 Standard in a December 15, 2014 filing to the ITU-T. Ex. J at 7 (identifying the parent of the '267 patent, U.S. App. No. 13/344893).

**THE '714 PATENT**

94.     U.S. Patent No. 10,536,714 ("the '714 patent") is titled "Method for coding and an apparatus," and names Mehmet Oguz Bici, Jani Lainema, and Kemal Ugur as inventors.

95.     Upon information and belief, the '714 patent is assigned to Nokia.

96.     As assignee of the '714 patent, which was assigned to Nokia Corporation during the development of the H.265 Standard, Nokia is successor-in-interest to Nokia Corporation's rights and obligations under the '714 patent and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the '714 patent.

97.    The '714 patent was issued on January 14, 2020, from an application filed March 18, 2019, and claims priority to November 4, 2011.

98.    Nokia alleges that the '714 patent is essential to material that has been included in the H.265 Standard since at least April 2013, and that this material remains in current editions of the H.265 Standard. Upon information and belief, the relevant functionality was proposed for inclusion into the H.265 Standard before April 2013 if it was considered and adopted into the standard by that time.

99.    Nokia Corporation declared the '714 patent essential to the H.265 Standard in a June 11, 2013 filing to the ITU-T. Ex. D at 10 (identifying the parent of the '714 patent as U.S. App. No. 13/666680).

## NOKIA'S REFUSAL TO COMPLY WITH ITS FRAND COMMITMENTS AND ITS GLOBAL LITIGATION CAMPAIGN SEEKING INJUNCTIVE RELIEF

100.    To date, Nokia has failed to offer HP a license on FRAND terms for any of the Asserted Patents (or any of the patents in its H.264 and/or H.265 portfolios that it claims are SEPs). Instead, Nokia made offers for its worldwide patent portfolios that are far in excess of FRAND terms, violating its IPR declarations and FRAND obligations.

101.    In 2019, long after the H.264 Standard was frozen and implemented, Nokia contacted HP to discuss licensing, on a worldwide basis, its worldwide portfolio of patents purportedly essential to the H.264 Standard. Eventually, on March 16, 2020, Nokia provided HP with a list of patents that are purportedly practiced by the H.264 Standard. This list included the '808, '134, '818, '321, '469, '599, and '273 patents, amongst others. Nokia also provided a presentation that purportedly explained the H.264 Standard and how certain claims of Nokia's patents allegedly read on the H.264 Standard.

102.   After these initial communications, on July 22, 2020, Nokia identified HP products that it contended comply with the H.264 Standard, as well as certain claims of the '808, '134, '818, '321, '469, '599, and '273 patents, amongst other United States and foreign patents, that are allegedly practiced by the H.264 Standard. In the following months, Nokia provided further charts for United States and European patents, and on March 8, 2021, Nokia provided patent lists for "Encoding" and "Decoding" patents (defined in further detail below) that purportedly practice the H.264 Standard.

103.   In December 2020, Nokia offered terms for a license to the patents it contended cover the H.264 Standard. This offer violated Nokia's FRAND obligations. In particular, Nokia demanded a rate far in excess of any rate for comparable H.264 patents. For example, Nokia's demanded rate was more than one hundred times the rate determined by Judge Robart as FRAND for Motorola's portfolio of H.264 patents in *Microsoft Corp. v. Motorola Mobility, Inc.,* Case No. C10-1823JLR (W.D.Wa).

104.   In response, HP made a counteroffer of $884,864 for a "license and release" to the patents that Nokia contended cover the H.264 Standard. As HP explained to Nokia, this offer was based upon past FRAND licenses for similar technology.

105.   On May 13, 2021, Nokia provided three draft licenses to HP—one for encoding technologies only, one for decoding technologies only, and one for both encoding and decoding technologies. For each license, Nokia proposed a limited term, though each covered different patents, claims, and products. Despite this, the royalty structure for each proposed license was exactly the same.

106.   The same day that Nokia shared the draft licenses, it also shared claim charts that purported to show how the H.264 Standard is covered by the '808, '134, '818, '321, and '469

patents, amongst other United States patents owned by Nokia. Soon thereafter, on June 9, 2021, Nokia sent HP claim charts that purported to show how the H.264 Standard is covered by certain European patents. And one month later, on July 9, 2021, Nokia sent HP claim charts that purported to show how the H.265 Standard is covered by certain claims of the '818 patent, amongst other United States and foreign patents owned by Nokia. This was the first time that Nokia shared any charts concerning the H.265 Standard.

107.    On August 13, 2021, Nokia provided licenses with similar proposed terms for the H.265 Standard.

108.    After receiving Nokia's license offers, which were not being offered on FRAND terms, HP wanted to learn more about the proposed rates—including why the "Encoding" and "Decoding" licenses were quoted at the same royalty rate as the "Combined" license, which granted the same rights as the "Encoding" and "Decoding" licenses combined. HP thus followed up on August 16, 2021, and asked Nokia to provide details regarding how it arrived at its licensing rates, including (1) Nokia's views on the overall royalty burden for the Asserted Standards in personal computers; (2) Nokia's views on the value of its patented technology in the Asserted Standards, compared to the technology patented by others; (3) the relative number of Nokia licensees who have taken a license at Nokia's stated rates without any cross-license rights; (4) the number of Nokia patent licenses in which only the patents purportedly covering the Asserted Standards are licensed; and (5) the number of contributions Nokia has made to the Asserted Standards.

109.    On August 27, 2021, Nokia simply stated that its "H.264 and H.265 rates are based on the widespread acceptance of those rates in the marketplace." Nokia also identified additional patent claims that purportedly cover the H.265 Standard, including claims in the '808,

'818, and '321 patents, amongst other United States patents owned by Nokia. Nokia further identified HP products that Nokia contended contains technology that complies with the H.265 Standard.

110.    In subsequent communications, Nokia confirmed that it would "not provide a view on the royalty stack or the value of Nokia's patents as compared to the patents of others," and would not provide further royalty rate information. On September 23, 2021, HP requested a call to discuss Nokia's infringement contentions. For the next several months, HP and Nokia held numerous lengthy meetings to discuss the technical merits of Nokia's contentions for various United States and European patents owned by Nokia. HP also wished to discuss royalty calculations and how Nokia arrived at its valuations of the patents purportedly covering the Asserted Standards, including whether certain Nokia patents were more valuable than others, but Nokia refused to discuss these details, or even provide the licenses it had entered into with other parties for the same patents.

111.    At the conclusion of the technical meetings, the parties disagreed whether Nokia had shown that any HP products infringe Nokia's patents—or that Nokia was offering any of the license at FRAND terms. But HP requested a call on March 31, 2022, to discuss the licenses and contribution information related to Nokia's patents that purportedly cover the Asserted Standards. HP and Nokia held a follow-up meeting on June 28, 2022, where Nokia offered a lump sum license for hundreds of times HP's calculated FRAND value. HP could not agree to Nokia's unreasonable demand, and instead proposed another meeting in August 2022 to discuss the details of Nokia's licensing rates and patents purportedly essential to the Asserted Standards, and was prepared to present to Nokia the methodology used to calculate HP's offer. For more than a year, Nokia never responded or followed up. Instead, without warning, Nokia launched an

aggressive litigation campaign against HP and others to try to secure injunctions in various countries—all in an effort to force HP to pay a rate higher than the actual FRAND rate for Nokia's patents.

112. Since the commencement of licensing negotiations between Nokia and HP, HP has repeatedly asked Nokia to provide basic information necessary for HP to determine whether and how any rate that Nokia offers is in fact fair, reasonable, and non-discriminatory, including (a) the royalty basis to which Nokia contends the FRAND royalty rate would apply; (b) the methodology Nokia used to calculate its purported FRAND rate; (c) any indication that other companies are also paying any royalty rate that Nokia would seek from HP; (d) copies or summaries of license agreements with comparable companies; and (e) how any of Nokia's patents are more or less valuable than any other patent alleged to be essential to the Asserted Standards. Nokia consistently refused to provide this basic information.

113. The only offers that Nokia has made with respect to the Asserted Patents do not comply with Nokia's FRAND obligations. Despite repeated requests, Nokia refused to provide HP any specific information about any license agreements covering the Asserted Patents with other companies, which would allow HP to determine whether any future Nokia offers are in fact FRAND (no such information is necessary to determine that Nokia's only offer thus far is not FRAND), providing instead anonymized license data that failed to provide any basis for HP to evaluate those licenses for comparability.

## COUNT I – BREACH OF CONTRACT (FRAND) – UNREASONABLE ROYALTY DEMANDS

114. HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

115.    As set forth above, Nokia entered into express or implied contractual commitments with ITU-T, and is bound by such contractual commitments it made to ITU-T for the benefit of third-party implementers of the Asserted Standards. As part of its contractual obligations, and as further confirmed through IPR declarations to ITU-T, Nokia has committed to license the Asserted Patents to all implementers worldwide on FRAND terms. As one example, Nokia Corporation filed a "General Patent Statement and Licensing Declaration" in June 2001 in which it stated:

> The Patent Holder is prepared to grant—on the basis of reciprocity for the relevant ITUT Recommendation(s)—a license to an unrestricted number of applicants on a **worldwide, nondiscriminatory basis and on reasonable terms and conditions**.

Ex. C at 1 (emphasis added). Similarly, Nokia Corporation filed IPR declarations for specific patents, in which it made similar commitments "to grant a license to an unrestricted number of applications on a **worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations** of the above document." *See* Section "Nokia's Non-disclosure and/or Delayed Disclosure of IPR During the Standard-Setting Process." As the purported current assignee of the Asserted Patents (according to Nokia's Complaint), Nokia is bound by the contractual commitments that Nokia Corporation owed under the ITU-T IPR policy, and stands in the shoes of Nokia Corporation for any remedies arising from a breach or other violation of those contractual obligations.

116.    Consistent with ITU-T's standard declaration form, all of Nokia's declarations state that Nokia is required to offer to license (and ultimately license) its SEPs on FRAND terms, not just in the United States, but on a worldwide basis.

117.    Each third party that implements the Asserted Standards was and is an intended beneficiary of Nokia's contractual obligations. HP, as an implementer of the H.264 and H.265

Standards, is one of the intended third-party beneficiaries, and therefore obtains the benefit of the contractual commitments and obligations of Nokia with respect to each Asserted Patent, as well as any other such Nokia H.264 and H.265 SEPs worldwide. Based at least on Nokia's representations in its IPR declarations filed with ITU-T and available to the public, HP was and is entitled to rely on Nokia's FRAND contractual obligations as an implementer and third-party beneficiary, including by investing financial and human capital resources in developing, marketing, and selling products that support the Asserted Standards. HP remains ready to take a license to any Nokia SEP on actual FRAND terms, including any FRAND rate for Nokia's patents that is determined by this Court.

118.     Nokia has breached and continues to breach its contractual obligations by, for example, refusing to offer a FRAND-compliant license for the Asserted Patents, demanding unreasonable royalties that greatly exceed rates determined by courts and offered by other SEP owners, and unilaterally terminating negotiations with a willing licensee. On information and belief, the rates Nokia offered during negotiations exceed those paid by others to license Nokia's SEP portfolio. On information and belief, Nokia is seeking to exploit the lock-in leverage through its participation in developing the Asserted Standards to demand and compel HP to pay excessive, supra-competitive royalties.

119.     Nokia's breaches threaten HP's implementation of the technology in the Asserted Standards, should HP refuse to pay unreasonable, excessive, supra-competitive royalties and instead choose to defend itself in costly litigation.

120.     As a direct and necessary result of these and other contractual breaches, HP has been injured. HP has been and will be forced to expend financial resources defending this suit, including against Nokia's claims of patent infringement. Additionally, HP has suffered and will

continue to suffer the threat of increased costs, loss or potential loss of profits, loss of customers or potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

## COUNT II – BREACH OF CONTRACT (FRAND) – SEEKING INJUNCTIVE RELIEF AND UNILATERALLY ABANDONING NEGOTIATIONS

121.    HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

122.    As set forth above, Nokia entered into express or implied contractual commitments with ITU-T, and is bound by such contractual commitments it made to ITU-T for the benefit of implementers of the Asserted Standards.

123.    Each third party that implements the Asserted Standards was and is an intended beneficiary of Nokia's contractual obligations. HP, as an implementer of the H.264 and H.265 Standards, is an intended third-party beneficiary to and therefore obtains the benefit of the contractual commitments and obligations of Nokia with respect to each Asserted Patent, as well as any other such SEPs patents worldwide. Based at least on Nokia's representations in its IPR declarations filed with ITU-T and available to the public, HP was and is entitled to rely on Nokia's FRAND contractual obligations as an implementer and third-party beneficiary.

124.    Nokia has breached and continues to breach its contractual obligations by, without limitation, seeking injunctive relief against a willing licensee, HP, in this suit (*see* Compl., Prayer for Relief, VI-VII) and in the Unified Patent Court in Germany, *ex parte* preliminary injunctions in Brazil, and exclusion orders in the U.S. International Trade Commission. *See* Section "Nokia's Refusal to Comply With Its FRAND Commitments and Its Global Litigation Campaign Seeking Injunctive Relief." Nokia continues to breach its contractual obligations by threatening additional suits and injunctions in jurisdictions around the world.

125.    Nokia has further breached its contractual obligations to ITU-T by unilaterally terminating pre-suit negotiations with HP, including after HP expended significant time and resources to review the patents and technical materials provided by Nokia in an effort to negotiate with Nokia in good faith.

126.    Nokia's actions prevent HP, a willing licensee, from implementing the Asserted Standards in multiple jurisdictions around the world. In addition to defending against allegations in the United States, Germany, and Brazil, HP may be enjoined from selling its products, including current inventory, within certain countries (and as described below, has been preliminarily enjoined in at least one country so far). Additionally, Nokia's actions may stifle HP's investment in new products and innovations in these markets due to the threat that Nokia may seek or obtain injunctive relief against HP.

127.    As a direct and necessary result of these and other contractual breaches, HP has been injured. HP has been and will be forced to expend financial resources defending this suit, including against Nokia's claims of patent infringement. HP has been and may be excluded from selling products that support the Asserted Standards as a direct result of Nokia enjoining (or seeking to enjoin) HP's sales in one or more jurisdictions. Indeed, Nokia's preliminary injunction request in Brazil was granted on an *ex parte* basis—a decision that HP will appeal. Additionally, HP has suffered and will continue to suffer the threat of increased costs, loss or potential loss of profits, loss or potential loss of customers or potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

## COUNT III – DECLARATION OF UNENFORCEABILITY – LATE DISCLOSURE OF IPR DECLARATIONS

128.    HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

129.    Upon information and belief, in violation of their obligations to ITU, its members, and implementers, including HP, Nokia Corporation failed to timely disclose the Asserted Patents in accordance with the requirements of the ITU Policy. Since at least the filing of the patent applications leading to the Asserted Patents, the ITU Patent Policy required that "any ITU-T member organization putting forward a standardization proposal should, from the outset, draw the attention of the [Telecommunication Standardization Bureau (TSB)] to any known patent or to any known pending patent application, either their own or of other organizations." And under the standards of the ITU-T and the JVT, this meant that participants in the H.264 and H.265 standard-setting process were required to timely disclose patents that reasonably might be necessary to practice those standards. Nokia Corporation was bound by the ITU Patent Policy during its participation in the H.264 and H.265 Standardization.

130.    During development of the H.264 and H.265 Standards, Nokia Corporation employees attended meetings and submitted proposals for technology to be included in the H.264 and H.265 Standards. Despite its participation in these meetings, Nokia Corporation failed to disclose the existence of their patent rights during the development of the H.264 and H.265 Standards in a timely manner.

131.    The '818 patent was not declared essential to the H.264 Standard until October 11, 2010, more than 7 years after the first version containing the functionality Nokia alleges practices these patents was frozen into the H.264 Standard as subsequently published in May 2003. The '134 and '321 patents were not declared essential to the H.264 Standard until October 4, 2007, more than 4 years after the first version containing the functionality Nokia alleges

practices these patents was frozen into the H.264 Standard as subsequently published in May 2003. The '808 patent was not declared essential to the H.264 Standard until March 19, 2007, more than 3 years after the first version containing the functionality Nokia alleges practices these patents was frozen into the H.264 Standard as subsequently published in May 2003. And the '273, '599 and '469 patents were not declared essential to the H.264 Standard until June 26, 2007, more than 4 years after the first version containing the functionality Nokia alleges practices these patents was frozen into the H.264 Standard as subsequently published in May 2003.

132.    Similarly, the '991 patent was not declared essential to the H.265 Standard until September 2, 2016, more than 3 years after the first version containing the functionality Nokia alleges practices these patents was frozen into the H.265 Standard as subsequently published in April 2013. The '267 patent was not declared essential to the H.265 Standard until December 15, 2014, more than one year after the first version containing the functionality Nokia alleges practices these patents was frozen into the H.265 Standard as subsequently published in April 2013. And the '321, '818, and '714 patents were not declared essential to the H.265 Standard until June 11, 2013, after the first version containing the functionality Nokia alleges practices these patents was frozen into the H.265 Standard as subsequently published in April 2013.

133.    These late disclosures breached the contractual duty that Nokia Corporation and its successor-in-interest Nokia owed under the ITU's Patent Policy. Furthermore, these late disclosures constitute an implied waiver of Nokia's rights in the Asserted Patents as they relate to the H.264 and H.265 Standards, rendering them unenforceable against implementers of those standards.

134.    Nokia Corporation's repeated failure to disclose rights in the Asserted Patents to the ITU—for years after the H.264 and H.265 Standards were frozen—is part of a pattern of

egregious behavior that prevented the ITU and other SSO members from fully evaluating the relevant technologies when developing the H.264 and H.265 Standards. Upon information and belief, had the Asserted Patents been timely disclosed during the standard-setting process, members would have decided to standardize an alternative technology or left the relevant technology out of the standard. The failure to disclose each of the Asserted Patents in a timely fashion distorted and impaired the standardization process in an egregious way.

135.    Nokia Corporation and Nokia also benefitted unjustly from this late disclosure. For example, Nokia now claims that each of the Asserted Patents is essential to practice the H.264 and/or H.265 Standards, even though Nokia Corporation deprived ITU members of the ability to consider non-patented alternatives or to eliminate the functionality from the standard that Nokia now claims is covered by the Asserted Patents, such that the accused functionality would not have been included in the H.264 or H.265 Standards but for the lack of timely disclosure. Nokia and/or Nokia Corporation also have unjustly benefited from this late disclosure by demanding and obtaining licensing revenue based on the allegedly standards-essential nature of the Asserted Patents, by claiming enhanced value to investors and others through an inflated sense of its patent portfolio (which includes the Asserted Patents), and by relying on the allegedly standard-essential nature of the Asserted Patents to accuse HP of infringing the Asserted Patents.

136.    As the assignee of the Asserted Patents, which were assigned to Nokia Corporation during the development of the H.264 and H.265 Standards, Nokia is successor-in-interest to Nokia Corporation's obligations as a participant in the development of the H.264 and H.265 Standards and to Nokia Corporation's rights and obligations arising under the ITU Patent Policy with respect to the Asserted Patents.

137.    Nokia Corporation's misconduct in failing to timely disclose the Asserted Patents while the accused technologies were being adopted into the H.264 and H.265 Standards constitutes at least a waiver of its right—and thus Nokia's right as successor-in-interest—to enforce any claimed-essential patents against any entity practicing the H.264 and H.265 Standards, and renders the patents unenforceable against such standards.

## COUNT IV – VIOLATION OF THE SHERMAN ACT (SECTION 2)

138.    HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

139.    For anticompetitive purposes, the relevant market includes products that implement or support the functionality described in the Asserted Standards (the "Relevant Market").

140.    Prior to the creation and freezing of versions of the Asserted Standards, the Relevant Markets contained competing technologies that could perform the same or equivalent functions purportedly claimed in Nokia's SEPs for the Asserted Standards.

141.    As a member of the ITU-T during the standardization process, Nokia[1] participated in the development of the Asserted Standards, helping to decide what technologies, and specifically which technical proposals, would be added to the Asserted Standards before they were frozen. But while Nokia advocated for certain technical proposals to be included in the Asserted Standards, it, upon information and belief, was aware that it advocated for technical proposals for which it had IPR.

---

[1] For purposes of this cause of action, "Nokia" refers to Nokia Technologies Oy and the purported predecessor owner of the Asserted Patents, Nokia Corporation, since Nokia Technologies Oy stepped into the shoes of Nokia Corporation when the former purportedly acquired the Asserted Patents from the latter.

142.    By delaying its IPR declarations until after the standards were frozen, Nokia was able to have its patented technology adopted and frozen in the Asserted Standards at the expense of viable alternative technologies. Thus, by delaying its IPR declarations to the ITU-T, Nokia was able to remove competitors and their technology from the Relevant Markets, while ensuring its patented technology would remain, thus creating a monopoly in the Relevant Markets. Under ITU-T's Common Patent Policy, Nokia's patented technology may not have been included in the frozen versions of the Asserted Standards had Nokia admitted at the time to its unwillingness to license the Asserted Patents on FRAND terms. By delaying its declarations, Nokia induced the ITU-T to include its patented technology in the Asserted Standards, when it otherwise may not have succeeded.

143.    Once the Asserted Standards were frozen, Nokia submitted declarations to the ITU-T, committing to license its patents in the Relevant Markets on FRAND terms. But contrary to this commitment, Nokia has continued to demand unfair, unreasonable, and/or discriminatory licensing terms to implementers and potential licensees, including HP. Nokia's ability to seek supra-competitive and exorbitant royalty rates from its purported SEPs, while also seeking injunctive relief as to those SEPs, is evidence of the monopoly power it created through its intentional delay of IPR disclosures.

144.    Nokia's anticompetitive strategy is clear. Upon information and belief, despite knowing its patented technology was being considered for adoption in the Asserted Standards, and was, in fact, promoted by Nokia, Nokia waited until after the standards were frozen to declare to the ITU-T its purported SEPs. At the time Nokia declared its IPR, implementers wishing to license technology in the Relevant Markets were "locked-in" to acquire a license from Nokia because no viable alternative existed if the implementer chose to support the Asserted Standards.

By delaying its IPR declarations, Nokia acquired the power to raise prices in the Relevant Markets, and thus maintain a monopoly position in those markets. This acquisition of market power was the result of its delay in filing IPR declarations while simultaneously participating in the creation of the Asserted Standards. Nokia continues to maintain this unlawful power by failing to negotiate on fair, reasonable, and non-discriminatory terms despite claiming its patents are essential to the Relevant Markets, as it purports in this suit.

145.    As a direct and proximate result of Nokia's monopolization, HP has suffered injury to its business and is now threatened by the loss of revenue, loss of customers or potential customers, goodwill, and brand image. Nokia's monopolization has excluded viable alternatives from the Relevant Market, causing anticompetitive injury to HP as an implementer in the Relevant Market. Nokia now wields its monopoly as a weapon, forcing HP to incur significant costs, including attorneys' fees, and expend vast resources to defend against this suit, two suits in the U.S. International Trade Commission, and suits and potential suits in Brazil and the Unified Patent Court in Germany, including actions in which Nokia is seeking injunctive relief.

### COUNT V – BREACH OF DUTY TO NEGOTIATE IN GOOD FAITH

146.    HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

147.    Pursuant to Nokia's FRAND commitments subject to Swiss law, as set forth above, Nokia was obligated to offer a FRAND-compliant license and negotiate in good faith towards a license on FRAND terms and conditions. As set forth above, Nokia repeatedly refused to offer a license on FRAND terms and conditions over the course of a multi-year negotiation, unilaterally disengaged and terminated licensing negotiations, and routinely withheld information sufficient for HP to assess the value of the proposed license and whether the

proposed license terms were, in fact, FRAND-compliant. Nokia's years-long refusal to comply with its contractual obligations is a breach of its obligation to negotiate in good faith with HP.

148.    As a result of Nokia's breach of its duty to negotiate in good faith, HP has been injured, including in HP's costs and expenses resulting from years-long negotiations, interruption to business activity, and expenses required to defend against claims in Nokia's U.S., German, and Brazilian lawsuits resulting from Nokia's breach.

## COUNT VI – DECLARATORY JUDGMENT OF OBLIGATION OF NOKIA TO LICENSE SEPS ON FRAND TERMS AND CONDITIONS AND DECLARATION OF FRAND TERMS AND CONDITIONS

149.    HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

150.    Nokia and Nokia Corporation have participated in the development and implementation of industry standards through their membership and participation in SSOs, including ITU-T. Nokia and Nokia Corporation have submitted licensing declarations that commit themselves, by contract, to license its IPR on FRAND terms and conditions to implementers of the Asserted Standards. As an implementer of the Asserted Standards, HP and its customers are intended third-party beneficiaries of Nokia's contractual commitments and obligations to the ITU-T.

151.    As set forth above, Nokia has not engaged in good-faith negotiations with HP to reach an agreement on FRAND terms and conditions for a license to Nokia's SEPs that are actually essential to the Asserted Standards, including by failing to offer HP a license on FRAND terms and conditions.

152.    As a result of the acts detailed herein, a substantial continuing and justiciable controversy of sufficient immediacy exists between Nokia and HP as to the FRAND terms and

conditions for the Asserted Patents identified in Nokia's Complaint and/or for a worldwide license to Nokia's SEPs that are actually essential to the Asserted Standards.

153.    Absent a declaration of HP's rights to a license and the FRAND terms and conditions for such a license, Nokia will continue to cause HP injury and damage.

154.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, HP requests a judicial determination and declaration that (1) Nokia has not offered HP a license to Nokia's SEPs that are actually essential to the Asserted Standards on FRAND terms and conditions; (2) HP is entitled to a license on FRAND terms and conditions to any Nokia SEPs essential to the Asserted Standards; and (3) a determination of FRAND royalty terms for a license to Nokia's portfolio of SEPs that are essential to the Asserted Standards with those conditions being imposed on the parties.

## COUNT VII – COMMON LAW FRAUD

155.    HP realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

156.    Nokia (and Nokia Corporation) and its representatives to the ITU-T failed, despite numerous opportunities and its obligation to do so, to disclose relevant IPR to the ITU-T during the development of the Asserted Standards in the ITU-T working group meetings in which the standards were developed. Further, Nokia affirmatively misrepresented its intent to license its technologies on FRAND terms by, for example, not timely disclosing and concealing its IPR, and making false FRAND commitments. On information and belief, had Nokia properly disclosed its IPR in a timely manner, and had Nokia disclosed its true intent to assert that parties implementing the standard were not licensed and should be enjoined from selling products compliant with the Asserted Standards, or otherwise would be required to pay exorbitant license

fees and accept other non-FRAND terms, the ITU-T would have decided to standardize an alternative technology to perform the relevant function and HP would have utilized those alternative technologies. Alternatively, the ITU-T would have continued to leave the relevant function out of the standard, in which case implementers and users of the standard, such as HP, would have been free to choose various alternative technologies to perform that function, and the ITU-T would have been free to continue to evaluate competing alternative technologies for potential standardization in future iterations of the standard.

157.   Nokia's (and Nokia Corporation's) and its representatives to the ITU-T's late disclosure and false FRAND commitments proximately resulted in incorporation into the standard of technology over which Nokia now claims patent rights. Nokia's late disclosure and false FRAND commitments also induced implementers and users of the standard, such as HP, to incorporate certain functionality into their products that Nokia alleges infringes its IPR.

158.   Nokia, as part of its efforts to have its patents declared essential, falsely committed to offer licenses on FRAND terms to the essential patents.

159.   As members of the public that would potentially implement the standards and specifications set forth by the ITU-T, HP, its vendors, and its customers are intended third-party beneficiaries of Nokia's representations and contractual commitments to the ITU-T.

160.   Upon information and belief, those commitments were misrepresentations that Nokia knew were false at the time they were made. And indeed, Nokia has subsequently refused to license its declared essential patents on FRAND terms, including by offering non-FRAND terms and by refusing to offer any terms whatsoever, and has otherwise attempted to use its declared essential patents as leverage in litigation.

161.    Upon information and belief, each of the above commitments and misrepresentations by Nokia and its representatives to the ITU-T were material and false, Nokia knew these commitments and representations were material and false, the false commitments and representations were intended to induce implementers and users of the Asserted Standards, such as HP, to continue to implement and use the Asserted Standards, and HP actually and justifiably relied on these commitments and misrepresentations, which caused injury. The injury included at least HP's ongoing incorporation of functionality that allegedly practices the Asserted Standards and the costs associated with defending claims for patent infringement and defending against Nokia's suits seeking injunctions. Had HP known the above commitments and misrepresentations by Nokia were false, HP would have considered and potentially adopted alternative technology that would not incorporate the technology Nokia alleges is covered by its IPR.

162.    As a direct and proximate result of the foregoing, HP has lost business from its customers and potential customers, has had to defend against baseless patent infringement suits, and has been injured in its business and property in an amount to be determined at trial.

163.    Such harm further includes, but is not limited to, the financial cost of Nokia's tactics described herein, including Nokia's legal threats, patent infringement claims, and suits seeking injunctions or exclusion orders.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff HP, Inc. respectfully requests that this Court enter judgment in its favor as follows:

(a)    Enter judgment in favor of HP and against Nokia;

(b)     Adjudge and decree that Nokia is liable for breach of contract for failing to comply with its FRAND obligations, including by demanding excessive royalties;

(c)     Adjudge and decree that Nokia is liable for breach of contract for failing to comply with its FRAND obligations, including by unilaterally ceasing negotiations and seeking injunctions and exclusionary remedies against willing licensee HP;

(d)     Adjudge and decree that HP and all of its worldwide affiliates are entitled to a license from Nokia for the Asserted Patents, as well as any and all Nokia patents deemed to be or are declared to be essential to the Asserted Standards, under FRAND terms and conditions;

(e)     Adjudge and decree that Nokia breached its obligations under the ITU-T IPR policies to negotiate in good faith;

(f)     Adjudge and decree that each of the Asserted Patents is unenforceable against anyone practicing the H.264 and/or H.265 Standards or otherwise making, using, selling, offering for sale, or importing products supporting the H.264 and/or H.265 Standards because Nokia breached the ITU-T's IPR policies;

(g)     Enjoin enforcement of the Asserted Patents against anyone practicing the H.264 and/or H.265 Standards or making, using, selling, offering for sale, or importing products supporting the H.264 and/or H.265 Standards;

(h)     Adjudge and decree that Nokia has violated Section 2 of the Sherman Act and enjoin Nokia from further violations of that statute;

(i)     Adjudge and decree that Nokia is liable for common law fraud;

(j)     Award HP the amount of damages it proves at trial;

(k)     Award HP all reasonable attorneys' fees and costs;

(l)      Award taxable costs;

(m)    Award interest;

(n)     Award HP other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

HP hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil

Procedure as to all issues so triable.

Dated: December 11, 2023                          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ John V. Gorman*
John V. Gorman (#6599)
Amy M. Dudash (#5741)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendant HP Inc.*