# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| **NOKIA TECHNOLOGIES OY,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**HP, INC.,**<br><br>        **Defendant.** | **Civil Action No. 23-cv-1237-GBW** |

## PLAINTIFF NOKIA TECHNOLOGIES OY'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT/COUNTERCLAIMANT HP, INC.'S COUNTERCLAIMS

Dated: February 1, 2024

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 N. Market St. 12th Floor
Wilmington DE 19801
Tel.: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**TABLE OF CONTENTS**

I.     Introduction .......................................................................................................... 1
II.    Background .......................................................................................................... 2
  A.   The Relevant Standard Setting Body ............................................................... 2
  B.   The Claims and Allegations at Issue ................................................................ 3
III.   Legal Standard ..................................................................................................... 4
IV.    Argument ............................................................................................................. 5
  A.   HP failed to plead viable contract-based counterclaims and, to the extent they are premised on seeking injunctive relief, they fail as a matter of law. (Counts I–II, V.) .... 5
  B.   HP's declaratory request, premised on RAND, is insufficiently plead. (Count VI.) ...... 8
  C.   HP's unenforceability counterclaim is factually deficient. (Count III.) ......................... 8
  D.   HP's Section 2 claim fails to plausibly allege an antitrust violation. (Count IV.) .......... 8
    1.   HP has failed to allege anticompetitive conduct with particularity. ...................... 10
    2.   HP has failed to allege a relevant market ............................................................. 13
IV.    Conclusion ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*10X Genomics, Inc. v. Vizgen*,
  654 F. Supp. 3d 310 (D. Del. 2023) ................................................................................4

*3G Licensing, S.A. v. HTC Corp.*,
  No. 1:17-cv-00083 (D. Del. Oct. 2, 2020), D.I. 489 .......................................................6

*AG v. Interdigital, Inc.*,
  No. 3:23-cv-00002 (S.D. Cal. Aug. 9, 2023), D.I. 50 .....................................................6

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) .......................................................7, 11

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 11-CV-01846, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ............................10, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................................................4, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................................4

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) .................................................................................9, 10, 11

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
  485 F. Supp. 3d 712 (N.D. Tex. 2020), *aff'd sub nom. Cont'l Auto. Sys., Inc. v. Avanci, L.L.C.*, No. 20-11032, 2022 WL 2205469 (5th Cir. June 21, 2022) ....................9

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ............................................................................................8

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017) .............................................................................................5

*Koninklijke KPN N.V. v. Sierra Wireless, Inc.*,
  No. 17-cv-90, 2020 WL 1891454 (D. Del. Apr. 16, 2020) ..............................................6

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012) ................................................................................13

*Patel v. Dhaduk*,
  839 F. App'x 715 (3d Cir. 2020) .....................................................................................4

*Queen City Pizza v. Domino's Pizza*,
   124 F.3d 430 (3d Cir. 1997) ............................................................................................... 13

*Rambus Inc. v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008) ......................................................................................... 9, 12

*Townshend v. Rockwell Int'l Corp.*,
   No. C99-0400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ........................................ 11

*TQ Delta, LLC v. Adtran, Inc.*,
   No. 14-cv-954, 2021 WL 3633637 (D. Del. Aug. 17, 2021) .................................................. 6

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ........................................................................................................ 4, 14

*Wi-LAN Inc. v. LG Elecs., Inc.*,
   382 F. Supp. 3d 1012 (S.D. Cal. 2019) ............................................................................... 10

I.      **Introduction**

HP, Inc.'s Answer and Counterclaims are irreconcilably conflicted. Nokia Technology Oy asserts in this case claims from ten patents relating to the H.264 and H.265 video decoding standards (the "Nokia Asserted Claims"). In its Answer HP denies, and in its Counterclaims HP does not affirmatively allege, that any of the Nokia Asserted Claims are, in fact, essential to those standards. (*See* D.I. 11 Answer ¶1, Counterclaims ¶1.) In the face of those denials, and as the counterclaimant with the burden to both plead and prove its claims, HP has plead seven individual counterclaims that are all premised on the claims of Nokia's patents being essential to standardized technology. HP advances its counterclaims under two general theories: (1) that Nokia purportedly failed to identify the ten patents by specific patent number to the standard development organization ("SDO") when it made a contractual commitment to be prepared to license its *essential* patent claims on reasonable and non-discriminatory ("RAND") terms; and (2) that Nokia purportedly never intended to license its *essential* patent claims on RAND terms when it made its disclosure to the SDO. Either theory requires, as a threshold matter, that HP meet its burden to plead the essentiality of the Nokia Asserted Claims. Because HP has failed to affirmatively plead essentiality—and, to the contrary, HP has denied it—each of HP's counterclaims is missing a threshold element from the pleading.

What is more, HP attempts to morph what would be—even if properly plead—a breach of contract case into a federal antitrust proceeding based on deficient allegations about alleged disclosure and false RAND promises. But even under the narrow (and since called into question) Third Circuit precedent that has recognized a theory, HP fails to identify either (a) any purported alternative technologies that were excluded from the standard as a result of the challenged Nokia RAND commitments, or (b) any relevant market in which anticompetitive conduct could be evaluated. As a result, on top of failing to meet its burden to affirmatively plead (and ultimately

prove) essentiality, HP's antitrust counterclaims are inadequately plead for these additional reasons. Therefore, each of HP's counterclaims should be dismissed.

## II. Background

### A. *The Relevant Standard Setting Body*

SDOs develop technical standards that enable competing products from different manufacturers to connect, interoperate, and enjoy the benefits of the technologies described in the standard. (Counterclaim ¶ 15.) SDOs are comprised of many different industry participants, gathered into various working groups, who propose technical solutions for the standard; SDO members consider the various proposals and, through a deliberative process aimed at achieving consensus on the best solution for the technical problems, the SDO incorporates certain proposals into a standard. (*Id.* ¶ 16.) As part of that process, the SDO will frequently ask participants to contractually commit that, if a technical solution they propose for inclusion in the standard is covered by claims of a patent, they will be prepared to grant a license to the patent claims needed to implement those technical solutions (covered by standard-essential patents, or "SEPs") on either a royalty-free basis or on reasonable and non-discriminatory ("RAND") terms. (*Id.* ¶¶ 19–21; Counterclaim, Ex. A.) The requirement to provide a RAND commitment is typically contained in the SDO's intellectual property rights ("IPR") policy. (*Id.* ¶¶ 18–20.)

The International Telecommunications Union is one such SDO with a specific telecommunications sector ("ITU-T") that developed the H.264 and H.265 standards related to video decoding at issue here. (*Id.* ¶¶ 22, 27.) The ITU-T's IPR policy, known as its "Common Patent Policy," states that "it is desirable that the fullest available information should be disclosed" regarding the patented technology submitted for inclusion into ITU-T developed standards. (D.I. 11-1 (Counterclaim, Ex. A).) The policy then identifies three potential scenarios that arise when patented technology has been proposed for incorporation into the standard: the patent holder is

alternatively (i) willing to license its patented technology "required to implement the [standard]" free of charge to implementers of the standard, (ii) "willing to negotiate licences with other parties on a non-discriminatory basis on reasonable terms and conditions" for patented technology "required to implement the [standard]," or (iii) "not willing" to license its technology on RAND terms. (*Id.*)[1] The ITU also publishes guidelines on implementing its Common Patent Policy. (D.I. 11-2 (Counterclaim, Ex. B).)

### B. The Claims and Allegations at Issue

In its Complaint, Nokia alleges that HP makes, uses, or sells products that infringe upon Nokia Asserted Claims related to the H.264 and H.265 standards. (Compl. ¶¶ 279–359.) Nokia requested a declaration that it complied with its RAND commitment to negotiate toward a license in good faith, as well as a declaration that HP failed to negotiate in good faith. (*Id.* ¶¶ 360–70.)

In response, HP has asserted seven counterclaims against Nokia. HP alleges that Nokia failed to timely disclose to the ITU-T the specific patent numbers covering the Nokia Asserted Claims as essential to either the H.264 or H.265 standards and, in doing so, Nokia (i) implicitly waived its right to enforce the Nokia Asserted Claims (Count III) and (ii) violated Section 2 of the Sherman Act (Count IV). (*Id.* ¶¶ 128–45.) HP has also lodged contract-based counterclaims, arguing that Nokia has breached the ITU-T's IPR policy by (i) demanding unreasonable royalty rates that are not RAND (Count I), (ii) unilaterally abandoning negotiations with HP and seeking injunctive relief against a willing licensee (Count II), and (iii) failing to negotiate in good faith (Count V). (*Id.* ¶¶ 114–27, 146–48.) Based on these allegations, HP apparently seeks a declaration from this Court that Nokia must license its essential patent claims to HP on RAND terms, and it

---

[1] Although HP generally uses the term "FRAND" in its counterclaims, the actual term used in the SDO IPR policy at issue here is "RAND" and, therefore, Nokia uses that term herein.

3

asks the Court to make "a determination of FRAND [sic] royalty terms for a license to Nokia's portfolio of SEPs that are essential to the Asserted Standards with those conditions being imposed on the parties." (Count VI). (*Id.* ¶¶ 149–54.) Lastly, HP has alleged a common-law fraud counterclaim based on Nokia's allegedly untimely disclosure of its patents covering essential claims to the ITU-T and allegedly "false FRAND commitments" (Count VII). (*Id.* ¶¶ 155–63.)

## III. Legal Standard

Counterclaims are subject to the same pleading standards as complaints. *Patel v. Dhaduk*, 839 F. App'x 715, 720 n.6 (3d Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the counterclaims "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When a claim sounds in fraud, however, the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b) apply." *10X Genomics, Inc. v. Vizgen*, 654 F. Supp. 3d 310, 318 (D. Del. 2023). When antitrust claims are asserted (as HP has here), "it is only by taking care to require allegations" with sufficient heft that courts can "avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success. *Twombly*, 550 U.S. at 558–60 (citation omitted). Courts must review antitrust allegations carefully at the pleading stage because conclusory allegations about anticompetitive conduct could threaten to "chill the very conduct the antitrust laws are designed to protect." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 414 (2004).

While courts are typically confined to the four corners of the counterclaim when deciding a motion to dismiss, courts may consider exhibits attached to the complaint, such as a contract that is incorporated by reference, when deciding whether the counterclaim adequately states a claim. *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017).

IV. **Argument**

   A. **HP failed to plead viable contract-based counterclaims and, to the extent they are premised on seeking injunctive relief, they fail as a matter of law. (Counts I–II, V.)**

HP alleges that Nokia has breached its contractual commitment to the ITU-T in three ways: (i) by demanding non-RAND royalty rates for a license to Nokia's H.264 and H.265 SEPs (Count I), (ii) by abandoning negotiations with HP and seeking injunctive relief in judicial fora (Count II), and (iii) by failing to negotiate in good faith (Count V). (Counterclaim ¶¶ 114–27, 146–48.) But HP has failed to meet its pleading burden for all three contract-based claims, and Count II separately fails to state a claim as a matter of law.

*First*, all three contract-based counterclaims should be dismissed because HP did not meet its burden to affirmatively plead that claims of Nokia's patents are essential to the H.264 and H.265 standards. The ITU-T *Guidelines* state that a patent holder, by submitting a Declaration Form that contains the RAND commitment, "declares its willingness to license its Patents . . . in case part(s) or all of any proposals contained in its Contributions . . . are included in Recommendation(s) and the included part(s) contain items for which Patents [defined as 'those claims contained in and identified by patents'] have been filed and whose licence **would be required to practice or implement Recommendation(s)**." (Counterclaim, Ex. B at 6; *accord id.* at Annex 3.)[2] Put differently, Nokia's RAND commitment to the ITU-T encumbers only patent claims that are *incorporated into the standard and are essential* to implement the H.264 and H.265 standards.

HP did not meet its burden to plead that claims covered by Nokia's patents are "are included in ITU-T/ITU-R Recommendation(s) and the included part(s) contain items . . . whose use would be required to implement ITU-T/ITU-R Recommendation(s)." (Counterclaim, Ex. B at Annex 3; *accord* D.I. 11-3.) To the contrary, HP expressly "*denies* that Nokia has established that

---

[2] Nokia's June 7, 2001 RAND commitment contains nearly identical language. (D.I. 11-3.)

5

*any claims* of the Asserted Patents are, *in fact, essential* for compliance with the H.264 and H.265 Standards." (D.I. 11 at Answer ¶ 1 (emphasis added).) Because HP has denied that the Nokia Asserted Claims are essential to the standards at issue, and has pleaded only that *Nokia* alleges its patent claims are essential, HP has not met its burden to affirmatively plead that Nokia breached a contractual obligation to license those patent claims on RAND terms. As courts have recognized, the party seeking to invoke a RAND commitment—here, HP—bears the burden of "establish[ing] whether each element of a claim is standard-essential for purposes of any FRAND obligation." *TQ Delta, LLC v. Adtran, Inc.*, No. 14-cv-954, 2021 WL 3633637, at *3 (D. Del. Aug. 17, 2021); *see also Koninklijke KPN N.V. v. Sierra Wireless, Inc.*, No. 17-cv-90, 2020 WL 1891454, at *2 (D. Del. Apr. 16, 2020) ("The threshold question underpinning [the breach of FRAND claim] is whether the '662 patent is standard-essential. . . . [ETSI] contracts . . . do not bind KPN if its '662 patent is not essential. If there is no contract, then there is nothing for KPN to breach." (footnote omitted)).[3] That burden begins at the pleading stage, where courts have held the party invoking a RAND commitment must clearly plead the essentiality of the patents at issue in the case. *See u-blox AG v. Interdigital, Inc.*, No. 3:23-cv-00002 (S.D. Cal. Aug. 9, 2023), D.I. 50 at 12:22–16:8, 21:8–22:18 (noting at motion to dismiss hearing that plaintiff "can't have it both ways" by alleging the patents were not essential while also seeking a declaration that plaintiff was entitled to a FRAND license that—if the court imposed royalty terms—could be later challenged on the basis

---

[3] The party invoking RAND cannot point to a patent owner's "beliefs," declarations, or allegations about essentiality; rather, essentially must be established through objective proof. *See, e.g.*, *3G Licensing, S.A. v. HTC Corp.*, No. 1:17-cv-00083 (D. Del. Oct. 2, 2020), D.I. 489 at 7 (granting summary judgment on defendants' FRAND defense because "***essentiality depends on objective findings***, i.e., whether practicing the relevant standard ***in fact*** infringes the asserted patents and whether non-infringing alternatives ***in fact*** exist"; "[p]ointing to ***Plaintiffs' beliefs on these points . . . is insufficient to meet Defendants' burden***" (emphases added)). Because essentiality is a necessary element of HP's contract claims, HP bears the burden of affirmatively pleading essentiality in each of its Counterclaims, which HP has failed to do. *Supra* Section IV.A.

the patents are not actually essential). HP cannot have it both ways: either it affirmatively pleads (and ultimately proves) that the claims of the Nokia patents on which it is basing its counterclaims are essential to the standards at issue, a necessary predicate for each of its counterclaims which all rely upon Nokia's RAND commitment in some manner, or HP denies the claims of Nokia's patents are essential, in which case it fails to state a legally cognizable contract-based claim under each of asserted Counts I, II, and V.[4]

**Second**, HP's breach-of-contract theory in Count II—premised on Nokia requesting injunctive relief—fails because HP cannot cite language in the ITU-T's Common Patent Policy or *Guidelines* that would be breached by a patent owner seeking injunctions against infringing products. (Counterclaim ¶¶ 100–13, 121–27.) Indeed, the Common Patent Policy and *Guidelines* do not prohibit SEP holders from seeking injunctive relief. (*See generally* D.I. 11-1 and 11-2.) Without identifying contractual language that Nokia has purportedly breached, HP cannot state a cognizable breach-of-contract claim. Further, general RAND principles undermine HP's theory because RAND commitments do not prohibit patent owners from seeking injunctions. *See, e.g.*, *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331 (Fed. Cir. 2014) (stating that it would be error to apply "a *per se* rule that injunctions are unavailable for SEPs"), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).[5] Count II fails as a matter of law and should be dismissed with prejudice.

---

[4] For the reasons stated below, HP's failure to affirmatively plead essentiality is fatal to all of its counterclaims.

[5] Other persuasive legal authority agrees that RAND commitments do not bar SEP holders from seeking injunctions against infringing producers and products. *See, e.g.*, *Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments* at 4–5 (Dec. 19, 2019), https://www.justice.gov/atr/page/file/1228016/download ("All remedies available under national law, including injunctive relief and adequate damages, should be available for infringement of [SEPs] subject to a F/RAND commitment . . . .").

### B. HP's declaratory request, premised on RAND, is insufficiently plead. (Count VI.)

HP's Count VI, which seeks a declaration of "HP's right to a license and the FRAND [sic] terms and conditions for such a license" (Counterclaim ¶ 153), is also derivative of HP's contract-based claims. In other words, HP's claim to a "right to a license" is predicated on those patent claims that are essential to a standardized technology. So HP's request that the Court declare a right to a license presupposes that RAND applies which, in turn, requires a threshold affirmative pleading of essentiality. As demonstrated in connection with Counts I, II, and V, HP has not met its burden to plead essentiality. For the same reasons, Count VI is inadequately plead as well.

### C. HP's unenforceability counterclaim is factually deficient. (Count III.)

In Count III, HP alleges the Nokia Asserted Claims are unenforceable on the sole basis that Nokia allegedly waived its right to enforce them by violating a duty to identify the specific patent numbers covering the Nokia Asserted Claims as essential to the H.264 or H.265 standards to the ITU-T during the standard-setting process. (Counterclaim ¶¶ 133–34.) Once again, HP's entire theory is premised on the Nokia Asserted Claims being essential because the duty to declare only attaches to patent claims that are "***required to practice or implement Recommendation(s)***." (Counterclaim, Ex. B at 6; *accord id.* at Annex 3.) Because HP has failed to affirmatively plead essentiality, HP's unenforceability counterclaim should be dismissed.

### D. HP's Section 2 claim fails to plausibly allege an antitrust violation. (Count IV.)

In Count IV, HP relies on the same conduct underlying its deficient contract claims to allege violations of Section 2 of the Sherman Act, which prohibits monopolization. (Counterclaim ¶¶ 139–45.) But courts, academics, and practitioners have repeatedly "expressed caution about using the antitrust laws to remedy what are essentially contractual disputes between private parties engaged in the pursuit of technological innovation" through RAND licensing. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020). To be sure, the Third Circuit has previously held "a patent

8

holder's intentionally false promise to license essential proprietary technology on FRAND terms" to an SDO, "coupled with an SDO's reliance on that promise when including the technology in a standard," may be "actionable anticompetitive conduct" under Section 2 of the Sherman Act. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007). But that narrow holding—rendered before the Supreme Court clarified pleading standards—has since been called into question. *See, e.g.*, *Qualcomm Inc.*, 969 F.3d at 996–97 (noting "the Third Circuit's 'intentional deception' exception to the general rule that breaches of S[D]O commitments do not give rise to antitrust liability" and rejecting its application); *Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008) (concluding that the Third Circuit's *Broadcom* holding conflicted with Supreme Court precedent); *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 735 (N.D. Tex. 2020) ("The Court does not agree with those cases concluding that deception of an SSO constitutes the type of anticompetitive conduct required to support a § 2 claim."), *aff'd sub nom. Cont'l Auto. Sys., Inc. v. Avanci, L.L.C.*, No. 20-11032, 2022 WL 2205469 (5th Cir. June 21, 2022).[6]

---

[6] The Third Circuit in *Broadcom* relied significantly on an FTC decision, *see Broadcom*, 501 F.3d at 311–14, that was subsequently reversed by the D.C. Circuit, *see Rambus Inc.*, 522 F.3d at 466–69. Moreover, the court in *Broadcom* expressed an apparent concern about "patent hold-up." 501 F.3d at 310–12. The patent hold-up theory—to which HP also subscribes—hypothesizes that once patented technology is incorporated into a standard, SEP owners "demand higher royalties that reflect the invention's inclusion in the standard rather than the value attributable to the patented technology itself" because users of the standard are "locked-in" to using those SEPs. (Counterclaim ¶ 17.) However, in the years since *Broadcom*, no empirical evidence has established that alleged patent hold-up is a real-world problem. *See* Makan Delrahim, Ass't Att'y Gen., *The "New Madison" Approach to Antitrust and Intellectual Property Law* 9 (Mar. 16, 2018), https://www.justice.gov/opa/speech/file/1044316/download (noting that while "hold-up theories gained traction in the early 2000s, . . . they still remain an empirical enigma in the academic literature"); Alexander Galetovic & Stephen Haber, *The Fallacies of Patent-Holdup Theory*, 13 J. Comp. L. & Econ. 1, 9 (2017) (noting that "there is no positive evidence in support of [the patent-holdup theory's] core predictions"); Richard A. Epstein & Kayvan B. Noroozi, *Why Incentives for "Patent Holdout" Threaten to Dismantle FRAND, and Why It Matters*, 32 Berkeley Tech. L.J. 1381, 1388 (2017) ("[D]etailed empirical studies . . . have all come to the same conclusion: theoretical concerns regarding patent holdup . . . have not borne out in industries subject to innovation-driven standardization.").

9

And, even in *Broadcom*, the Third Circuit's holding narrowly allowed a Section 2 claim to survive a motion to dismiss only if it alleged the SEP holder "obtained and maintained its market power willfully" by falsely promising to "license its [standardized] technology on FRAND terms, ***on which promise the relevant SDOs relied*** in choosing the [standardized] technology for inclusion in the [] standard." 501 F.3d at 315. In an attempt to extend *Broadcom*'s narrow holding beyond its wrongly decided foundation, HP alleges that Nokia misled the ITU-T not only by making an allegedly false RAND promise, but also by disclosing the specific patents covering the Nokia Asserted Claims to the ITU-T only ***after*** the H.264/H.265 standards were frozen and selections about technology had been made. (Counterclaim ¶¶ 142–43.) As set forth below, HP fails to state a Section 2 claim even under *Broadcom* because it has failed to plead anticompetitive conduct with specificity (including conduct relating to ***essential*** patent claims or any viable technological alternatives to the Nokia Asserted Claims) and has failed to plead a relevant product market to support a Section 2 claim.

### 1.  **HP has failed to allege anticompetitive conduct with particularity.**

Because HP's Section 2 counterclaim sounds in theories of fraud (*e.g.*, HP's duplicative count of common-law fraud), HP must satisfy Rule 9(b)'s heightened pleading requirements. Indeed, the *Broadcom* court recognized that Rule 9(b)'s "heightened pleading requirements" apply even to "[a]nalogous claims for inequitable conduct before the" United States Patent and Trademark Office. 501 F.3d at 314 n.9.[7] *A fortiori*, Rule 9(b) should apply to HP's Section 2 claim

---

[7] In the seventeen years since *Broadcom* was decided, courts have applied Rule 9(b)'s heightened pleading standards to Section 2 claims based on allegedly fraudulent statements to SDOs. *See Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1023 (S.D. Cal. 2019) ("Allegations of anticompetitive conduct based [on] a fraudulent FRAND declaration theory also must satisfy Rule 9(b)'s heightened pleading standard."); *accord Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2011 WL 4948567, at *4 & n.5 (N.D. Cal. Oct. 18, 2011). Setting Rule 9(b) to the side, the Third Circuit decided *Broadcom* before the Supreme Court's groundbreaking decision

which sounds in fraud. HP's allegations do not satisfy the anticompetitive conduct element of a Section 2 claim for at least two reasons.

*First*, HP's Section 2 theory rests upon conduct in connection with *essential* patent claims. As set forth above, however, HP has denied the essentiality of the Nokia Asserted Patents. (D.I. 11 (Answer) ¶ 1.) Consistent with those denials, HP failed to allege that Nokia (i) intentionally failed to disclose *essential* patent claims or (ii) intentionally made a false promise to license *essential* patent claims on RAND terms such that there was any anticompetitive effect. HP has taken the position that a license to those patent claims would not even be necessary to practice the H.264/H.265 standards. Because HP has not affirmatively alleged that Nokia's Asserted Claims are essential to the standards at issue, HP has not met its pleading burden to state a Section 2 claim that requires plausible allegations of anticompetitive effects. *See Apple Inc.*, 2011 WL 49485672011, at *4 n.6 ("If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications. If the patents at issue are non-essential, then the 'lock-in' effect of the standard setting does not exist."); *see also Broadcom*, 501 F.3d at 308 (the anticompetitive conduct element of a Section 2 claim requires "harming the competitive process," not just a single competitor).

*Second*, HP's counterclaim also lacks non-conclusory allegations plausibly showing that the ITU-T relied on Nokia's conduct in choosing Nokia's technology *over a specifically identified competing alternative*. *See, e.g.*, *Townshend v. Rockwell Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505, at *11 (N.D. Cal. Mar. 28, 2000) (dismissing Sherman Act claim where the plaintiff did not plead "that the ITU could have adopted a [] standard which did not encompass [the SEP

---

in *Iqbal*, calling into question whether Broadcom's allegations would survive today even under Rule 8's plausibility requirement. *See* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

holder's] technology" as opposed to pleading the "standards-setting body was choosing among options, and there was a possibility that they could have adopted a standard which did not incorporate Dell's patent"). If no viable competing technology is specifically identified as having been excluded, the SDOs would have had no other option and "would have standardized the very same technologies" anyway, so any "alleged deception cannot be said to have had an effect on competition." *Rambus*, 522 F.3d at 466–67. Here, HP has not alleged **any** facts to support a claim that Nokia's allegedly delayed disclosures or fraudulent RAND commitments caused the ITU-T to exclude a specifically identified and viable alternative to Nokia's patented technologies.

Instead, HP alleges in conclusory fashion only that "by delaying its IPR declarations to the ITU-T, Nokia was able to remove competitors and their technology from the Relevant Markets, while ensuring its patented technology would remain, thus creating a monopoly in the Relevant Markets that Nokia's alleged delayed disclosure of its patented." (Counterclaim ¶ 142.) Again, HP never identifies any alternative technologies that the ITU-T would have adopted. This factual gap in the allegations is a fatal flaw that requires dismissal. *See Apple Inc.*, 2011 WL 4948567, at *6 (dismissing Apple's Section 2 claim because it "failed to allege . . . a viable alternative technology performing the same functionality would have been incorporated into the UMTS standard, or the relevant functionality would not have been incorporated into the standard at all"). Because HP makes only "conclusory statements that [had Nokia] properly disclosed the existence of its IPR, the relevant [SDO] would have selected a viable alternative technology or would have decided not to incorporate that proposal into the standard," HP has not pleaded a cognizable claim under Section 2. *Id.* (cleaned up).[8]

---

[8] HP's common law fraud claim (Count VII) fails because it is premised on the same theories that Nokia allegedly "affirmatively misrepresented its intent to license its technologies on FRAND [sic] terms by, for example, not timely disclosing and concealing its IPR and making false FRAND

### 2. HP has failed to allege a relevant market.

In addition to failing to plead essentiality or to identify any viable excluded technological alternatives, HP has also failed to identify a relevant market. "Plaintiffs have the burden of defining the relevant market. Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997).

Here, HP defines its relevant market as "products that implement or support the functionality described in the Asserted Standards"—*i.e.*, H.264 and H.265, a definition that fails to meet HP's pleading burden. (Counterclaim ¶ 139.) HP's pleaded market—a physical product market—is completely divorced from the alleged anticompetitive conduct described in its counterclaim. HP's theory of anticompetitive conduct (although not sufficiently plead) appears to be that Nokia induced the ITU-T to incorporate Nokia's patented technology into the H.264 and H.265 standards to the exclusion of other technologies. Put differently, HP's core theory appears to be monopolization of a ***technology*** market—not the ***product*** market it alleges in its complaint. It is unclear, for instance, what "products that implement or support the functionality" of the H.264 and H.265 standards have been excluded from the relevant market due to the alleged exclusion of

---

[sic] commitments." (Counterclaim ¶ 156.) HP failed to state any cognizable contract or antitrust claims, and it has fallen far short of pleading any viable claim for common law fraud, which imposes an even greater standard. *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012). Count VII should likewise be dismissed.

alternative technologies that the ITU-T could have adopted in lieu of Nokia's patented technology or that Nokia is a competitor in any such product market.

HP attempts to sidestep this disconnect by suggesting that the inclusion of Nokia's patented technology into the H.264/H.265 standards gives Nokia "the power to raise prices in the Relevant Markets, and thus maintain a monopoly position in those markets." (Counterclaim ¶ 144.) But the "possession of monopoly power" and "the concomitant charging of monopoly prices" "is not unlawful; it is an important element of the free-market system." *Verizon Commc'ns Inc.*, 540 U.S. at 407. Even assuming Nokia could charge non-RAND licensing fees—which, in turn, may or may not affect prices for products that implement the standards at issue depending upon whether the manufacturer chooses to pass on royalties to consumers or absorb such costs—HP ignores that Nokia's RAND commitment is contractually enforceable regardless of Nokia's purported intent. Licensees could pursue simple breach-of-contract claims instead of raising prices. HP has failed to plead a Section 2 counterclaim.

## IV. Conclusion

For all the foregoing reasons, the Court should (a) dismiss Count II with prejudice because the ITU policies do not prohibit a party from seeking injunctive relief; and (b) dismiss Counts I and III-VII without prejudice because HP did not meet its burden to plead essentiality in any of its claims, and failed to identify a relevant product market and excluded competing technologies in connection with Count IV.

Dated: February 1, 2024

Respectfully submitted,

*/s/ Michael J. Farnan*
**FARNAN LLP**
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St. 12th Floor

14

  Wilmington DE 19801
  Tel.: (302) 777-0300
  bfarnan@farnanlaw.com
  mfarnan@farnanlaw.com

  **MCKOOL SMITH, P.C.**

  Warren H. Lipschitz*
  Alexandra F. Easley*
  300 Crescent Ct. Ste. 1200
  Dallas, TX 75224
  Tel.: (214) 978-4000
  wlipschitz@mckoolsmith.com
  aeasley@mckoolsmith.com

  R. Mitch Verboncoeur*
  303 Colorado St Suite 2100
  Austin, TX 78701
  Tel.: (512) 692-8700
  mverboncoeur@mckoolsmith.com

  Josh Newcomer*
  600 Travis St., Suite 7000
  Houston, Texas 77002
  Tel.: (713) 485-7300
  jnewcomer@mckoolsmith.com

  Kevin Burgess*
  104 East Houston St., Suite 300
  Marshall, Texas 75670
  Tel.: (903) 923-9000
  kburgess@mckoolsmith.com

  **ALSTON & BIRD LLP**

  Theodore Stevenson, III*
  2200 Ross Ave. #2300
  Dallas, TX 75201
  Tel.: (214) 922-3400
  ted.stevenson@alston.com

  John D. Haynes*
  Nicholas T. Tsui*
  Shawn Gannon*
  1201 West Peachtree Street
  Atlanta, GA 30309

        Tel.: (404) 881-7000
        john.haynes@alston.com
        nick.tsui@alston.com
        shawn.gannon@alston.com

        **\*Local Civil Rule 83.5 motions for pro hac vice admission forthcoming**