**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

NOKIA TECHNOLOGIES OY,

       Plaintiff / Counterclaim Defendant,

         v.

HP, INC.,

       Defendant / Counterclaim Plaintiff.

Civil Action No. 23-cv-1237-GBW

**DEFENDANT HP, INC.'S OPPOSITION TO PLAINTIFF NOKIA TECHNOLOGIES OY'S MOTION TO DISMISS DEFENDANT/COUNTERCLAIMANT HP, INC.'S COUNTERCLAIMS**

Dated: February 15, 2024

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Telephone:  302.574.3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 4

II.     NATURE AND STAGE OF PROCEEDINGS .................................................... 5

III.    SUMMARY OF THE ARGUMENT ...................................................................... 6

IV.     STATEMENT OF FACTS ........................................................................................ 7

V.      ARGUMENT .............................................................................................................. 8

      A.      Legal Standard ................................................................................................... 8

      B.      HP Need Not Concede Standard Essentiality at the Pleading Stage
           (Applicable to Counts I-VII) ........................................................................... 9

      C.      ITU-T Language Does Not Bar HP's Breach of Contract Claim (Nokia
           Seeking Injunctions and Unilaterally Abandoning Negotiations)
           (Applicable to Count II) ................................................................................. 13

      D.      Nokia's Arguments Against HP's Unenforceability Counterclaim
           Similarly Fail (Applicable to Count III) ..................................................... 14

      E.      HP Alleges a Cognizable Antitrust Claim Under Section 2 of the Sherman
           Act (Applicable to Count IV) ....................................................................... 15

           1.      HP Sufficiently Pleads All Elements Required By *Broadcom v.
                 Qualcomm* ............................................................................................. 15

           2.      HP Is Not Required to Affirmatively Allege That Nokia's Asserted
                 Patents Are Essential to the Asserted Standards ..................................... 18

           3.      HP Pleads Anticompetitive Conduct With Sufficient Particularity,
                 As Required by *Broadcom* ....................................................................... 19

           4.      HP Sufficiently Pleads a Relevant Market .............................................. 21

VI.     CONCLUSION .......................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11-CV-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ..........................16, 18

*Arbutus Biopharma Corp. v. Moderna, Inc.*,
638 F. Supp. 3d 397 (D. Del. 2022) ...........................................................................................6

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007)............................................................................................ *passim*

*Core Wireless Licensing SARL v. Apple Inc.*,
899 F.3d 1356 (Fed. Cir. 2018)................................................................................10, 11, 12

*CrowdStrike, Inc. v. NSS Labs, Inc.*,
No. CV 17-146 (MN), 2018 WL 6716094 (D. Del. Dec. 21, 2018).........................................7

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ...............................................................................................................10

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
935 F. Supp. 2d 772 (D. Del. 2013) ......................................................................................5, 6

*FTC v. Qualcomm*,
969 F.3d 974 (9th Cir. 2020) ................................................................................................13

*Klotz v. Celentano Stadtmauer & Walentowicz LLP*,
991 F.3d 458 (3d Cir. 2021)......................................................................................................6

*Koninklijke KPN N.V. v. Sierra Wireless, Inc.*,
No. 17-cv-90-LPS, 2020 WL 1891454 (D. Del. Apr. 16, 2020) ..............................................9

*Lenovo (United States) Inc. v. Interdigital Tech. Corp.*,
No. 20-493-LPS, 2021 WL 1123101 (D. Del. Mar. 24, 2021)...................................13, 14, 19

*Microsoft Mobile Inc. v. InterDigital, Inc.*,
No. 15-723-RGA, 2016 WL 1464545 (D. Del. Apr. 13, 2016)...................................13, 16, 17

*Qualcomm Inc. v. Broadcom Corp.*,
548 F.3d 1004 (Fed. Cir. 2008)..........................................................................................11, 12

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997)....................................................................................................19

*Rambus Inc. v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008) ................................................................................13, 18

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
    No. SACV1400341JVSANX, 2014 WL 12588293 (C.D. Cal. Sept. 30, 2014) ..................6, 7

*Townshend v. Rockwell Int'l Corp.*,
    No. C99-0400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ....................................17, 18

*TQ Delta, LLC v. Adtran, Inc.*,
    No. 14-cv-954-RGA, 2021 WL 3633637 (D. Del. Aug. 17, 2021) ..........................................9

*Winer Fam. Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ..................................................................................................10

*Zenith Electronics, LLC v. Sceptre, Inc.*,
    No. LA CV14-05150 JAK (AJWx), 2015 WL 12765633 (C.D. Cal. Feb. 5,
    2015) ......................................................................................................................................7

**Statues**

Fed. R. Civ. P. 9(b) ......................................................................................................................16

Fed. R. Civ. P. 15(a)(2) ..................................................................................................................2

## I.     INTRODUCTION

Nokia's Motion to Dismiss HP Inc.'s ("HP") Counterclaims (D.I. 18, "Motion") seeks to dismiss all counterclaims by improperly using patent essentiality as both a sword and shield.  In its Complaint (D.I. 1) against HP, Nokia alleges infringement of ten patents (the "Asserted Patents") that Nokia asserts include claims essential to the Asserted Standards.[1]  Yet in its Motion to dismiss HP's Counterclaims[2] related to those same ten Asserted Patents (and more), Nokia argues HP's claims must be dismissed because HP has not conceded essentiality.[3]  But HP is not required to do so in order to assert its Counterclaims.  Indeed, Nokia cites no legal authority in this District or the Third Circuit that requires HP to concede essentiality at the pleading stage, and courts outside this Circuit have expressly rejected Nokia's argument.

HP pleads that (1) Nokia alleges in its Complaint that each of the Asserted Patents is essential to one or both of the Asserted Standards; (2) Nokia filed declarations with the ITU standard-setting organization ("SSO") claiming that each Asserted Patent is essential to one or both of the Asserted Standards; (3) Nokia's infringement allegations rely almost exclusively on standard documents; and (4) Nokia represented during multi-year negotiations with HP that its relevant patent portfolio includes patents essential to the Asserted Standards.  This is more than sufficient for HP to plausibly plead that it is entitled to relief.  In making its motion, Nokia asks this Court to ignore Nokia's actions, statements, and allegations and HP's counterclaim allegations, and force HP to conduct an essentiality analysis at the pleading stage, prior to receiving Nokia's infringement contentions and without the benefit of fact and expert discovery. This is contrary to law and should be rejected.

---

[1] As used herein and in HP's Counterclaims, the H.264 and H.265 Standards released by the International Telecommunication Union ("ITU") are referred to as the "Asserted Standards."
[2] HP's counterclaims appear at D.I. 11 at 44-83 ("Counterclaims").
[3] The Asserted Patents are defined in the Complaint, D.I. 1 ¶ 7.

The Court should also reject Nokia's arguments related to HP's counterclaim for a Sherman Act Section 2 antitrust violation.  HP pleads that Nokia participated in the standardization process and advocated for particular technical proposals to be included in the Asserted Standards, but concealed and delayed disclosure to the ITU SSO that those proposals were encumbered by Nokia's patents and/or patent applications, and that these actions represented an improper monopolization attempt that injured HP.  Nokia seeks dismissal of the Section 2 claim by forcing HP to plead stringent requirements that are not required by *Broadcom v. Qualcomm*—the governing law in this District—relying instead on out-of-circuit case law. Additionally, Nokia misapprehends HP's definition of the relevant market and seeks dismissal based on that improper reading.

The Court should deny Nokia's Motion to Dismiss.  To the extent the Court dismisses any counterclaim, HP requests that the Court grant HP leave to amend such counterclaim(s). Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Because Nokia seeks dismissal on HP's purportedly deficient pleading of Counts I and III-VII— not that those counts are improper as a matter of law—any such amendment would not be futile.[4]

## II.     NATURE AND STAGE OF PROCEEDINGS

This litigation is in its early stages.  Nokia filed suit on October 31, 2023; HP answered and alleged counterclaims on December 11, 2023; and Nokia filed the present motion on February 1, 2024.

HP asserts seven counterclaims against Nokia based on Nokia's conduct involving its Asserted Patents.  In particular, HP asserts three contract-related counterclaims related to

---

[4] *See* D.I. 18 at 1 (seeking to dismiss counterclaim counts I and III-VII *without* prejudice).

Nokia—demanding unreasonable royalties for its FRAND[5]-encumbered Asserted Patents (Count I), unilaterally abandoning negotiations with HP and seeking injunctive relief against willing-licensee HP (Count II), and failing to negotiate in good faith (Count V).  Based on Nokia's late disclosure of its intellectual property rights to the ITU—including waiting until after the standards were frozen to identify and declare its patents essential—HP seeks a declaration of unenforceability (Count III), and asserts a Sherman Act Section 2 antitrust violation claim (Count IV) and a common law fraud claim (Count VII).  HP also counterclaims for a declaration of Nokia's obligation to license standard-essential patents ("SEPs") on FRAND terms and conditions, and a declaration of the FRAND terms and conditions, including rates (Count VI).

## III.     SUMMARY OF THE ARGUMENT

1.      HP sufficiently pleads counterclaims I-VII.  HP is not required to affirmatively concede essentiality at the pleading stage where Nokia (1) alleges in its Complaint that each of the Asserted Patents is essential; (2) has declared each of the Asserted Patents essential to the Asserted Standards; (3) relies on the Asserted Standards to allege infringement; and (4) represented during negotiations that the Asserted Patents are essential.  Nokia fails to identify any legal support requiring HP to concede essentiality at the pleading stage.  Likewise with respect to counterclaim III, Nokia additionally does not show that HP is required to prove actual essentiality at any time, let alone at the pleading stage.

2.      This Court should reject Nokia's argument that counterclaim II (breach of contract), which alleges that Nokia unilaterally abandoned negotiations and sought injunctive relief against a willing licensee, must fail as a matter of law.  HP pleads all elements of its breach

---

[5] While HP's Counterclaims use the term FRAND ("fair, reasonable, and non-discriminatory") and Nokia's Motion uses the term RAND ("reasonable and non-discriminatory"), there is no material difference in these terms for the purposes of Nokia's Motion.

claim, and Nokia fails to identify any legal support sufficient to carry its burden to show that HP's counterclaims are legally deficient.

     3.     HP sufficiently pleads all elements of a Sherman Act Section 2 antitrust violation (counterclaim IV) as required by *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), the Third Circuit law governing a patent holder's intentionally false promise to license essential technology on FRAND terms. The Court should reject Nokia's arguments that *Broadcom* is not good law. HP properly pleads anticompetitive conduct with sufficient particularity and is not required to plead the stringent requirement Nokia demands. Additionally, the Court should reject Nokia's misapprehension of HP's definition of the "relevant market."

## IV.    STATEMENT OF FACTS

     SSOs develop standards to increase interoperability and encourage innovations that lead to an increase in competition and improved products for consumers. *See* Counterclaims, D.I. 11 ¶¶ 15-17. Standards are created based on proposals from SSO members and other stakeholders, which are either accepted and included within the standard, or rejected in favor of alternatives (or the functionality is not included at all). So-called "lock-in" is a major concern of SSOs because once a proposal is incorporated into a standard, the alternatives to perform the functions are no longer viable substitutes, and SEP owners can seek to exclude implementers from practicing the **entire standard**, not merely the claimed invention. *Id.* ¶ 17. This lock-in effect allows SEP owners to demand supra-competitive royalties that are not tied to the value of the invention ("hold-up").

     A common method to prevent hold-up is to require SSO members participating in the standardization process to declare that the member has intellectual property rights ("IPR") that cover the proposed technology, so that the SSO (and its members) can consider the technical merit of the proposal as well as the potential implications of incorporating technology into the

standard that is encumbered by IPR.  *Id.* ¶¶ 18-21.  The SSO relevant to this dispute, the ITU-T, has a Common Patent Policy that governs SSO members' obligations.  *Id.* ¶¶ 22-27, Exs. A-B.

Nokia asserts in the Complaint that all Asserted Patents are essential to the Asserted Standards.  *See* Compl., D.I. 1 ¶¶ 65, 83, 104, 130, 153, 175, 198, 221, 244, 268.  Additionally, Nokia has declared to the ITU-T the patents are or may be essential to the Asserted Standards and has represented to HP during multi-year negotiations that Nokia's patent portfolio includes numerous essential patents to the Asserted Standards.  As outlined in HP's Counterclaims, however, Nokia waited until ***after*** the Asserted Standards were frozen before informing the ITU-T about the patents' purported essentiality, violating the ITU-T's Common Patent Policy and injuring HP and others.  *See* Counterclaims, D.I. 11 ¶¶ 28-99.  Once the Asserted Standards were frozen, and allegedly incorporated, at Nokia's urging, Nokia's patented technology, Nokia sought grossly excessive rates that reflected the value of the standard as a whole, rather than the ***ex ante*** value of the alleged inventions.  *See, e.g.*, Counterclaims, D.I. 11 ¶¶ 2-3, 5, 100-113, 118-119, 143.  When HP refused to pay royalties that exceeded the FRAND rate Nokia contractually obligated itself to offer, Nokia began a worldwide litigation campaign to exclude HP from the market through injunctions (including on an ***ex parte*** basis) in Brazil and the Unified Patent Court in Germany.  *See, e.g.*, Counterclaims, D.I. 11 ¶¶ 4, 124-127, 145, 148.

## V.     ARGUMENT

### A.     Legal Standard

In evaluating a motion to dismiss, "courts separate the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 775 (D. Del. 2013) (brackets in original, citations and internal quotation marks omitted).  "This first step requires courts to draw all reasonable inferences in favor of the non-moving party."  *Id.*

-8-

(citations omitted).  Courts also determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* (citations omitted).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021).  The moving party "bears the burden of demonstrating that the [non-movant] has not stated a claim upon which relief can be granted."  *Arbutus Biopharma Corp. v. Moderna, Inc.,* 638 F. Supp. 3d 397, 403 (D. Del. 2022).

> **B.    HP Need Not Concede Standard Essentiality at the Pleading Stage (Applicable to Counts I-VII)[6]**

Nokia's primary argument for dismissal is based on the mistaken premise that, to raise SEP-related claims, HP must affirmatively plead or concede that Nokia's Asserted Patents are essential to the Asserted Standards.  But this is not the law, and Nokia does not cite any authority—from this District or elsewhere—suggesting otherwise.

Indeed, Nokia's argument has been expressly rejected in other cases.  For example, in *TCL v. Ericsson*, SEP owner Ericsson moved to dismiss a similar claim by TCL.  *See TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. SACV1400341JVSANX, 2014 WL 12588293 (C.D. Cal. Sept. 30, 2014).  Ericsson argued that, to assert a claim against Ericsson for breach of an agreement to license SEPs on FRAND terms,

---

[6] Nokia argues that this issue is "fatal to all of its counterclaims."  Opening Br., D.I. 19 at 7 n. 4.  Nokia makes this argument with respect to Counts I-II and V (*id.* at 5-7), Count VI (*id.* at 8), Count III (*id.*), Count IV (*id.* at 11).  Nokia seeks to dismiss Count VI as "derivative of HP's contract-based claims" and because the claim "is predicated on those patent claims that are essential to a standardized technology," but Nokia does not identify any argument unique to this claim.  Opening Br., D.I. 19 at 8.  Nokia does not make any specific arguments with respect to Count VII, but states in footnote 8 that common law fraud is "premised on the same theories" as other counts, and, as such, Nokia appears to argue that this issue is relevant to Count VII as well.  *Id.* at 12-13 n.8

TCL was required to concede in the complaint that Ericsson's patents were essential to the standards at issue. *Id.* at *4.  In rejecting Ericsson's argument and declining to dismiss TCL's breach of contract claim, the court agreed that TCL's allegations were sufficient where TCL alleged that Ericsson had a contractual obligation to license its patents on FRAND terms because Ericsson represented that the patents were standard essential. *See id.*  Importantly, the court found "no reason why TCL cannot put forth the argument that TCL's patents are not standard essential while reserving the right to pay the FRAND rate should the Court ultimately determine otherwise." *Id.*  Moreover, the court noted that the Federal Rules of Civil Procedure expressly permit a party to plead in the alternative. *Id.* at *4 n. 3 (citing Fed. R. Civ. P. 8(d)).  The Central District of California reached a similar result in *Zenith Electronics, LLC v. Sceptre, Inc.*, No. LA CV14-05150 JAK (AJWx), 2015 WL 12765633, at *3-4 (C.D. Cal. Feb. 5, 2015) (denying motion to dismiss breach of contract claim where defendant alleged that the patents were "purportedly" or "allegedly" essential, establishing a defense challenging the essentiality of the patents-in-suit while maintaining breach claim).[7]

Here, "HP brings these counterclaims based on Nokia's refusal to offer a license to its ***alleged*** *standard-essential patents*" on FRAND terms, "breaching its contractual obligations made through its…participation and membership in the International Telecommunication

---

[7] Regardless, Nokia's declarations to the ITU state that Nokia "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions…," and this declaration is made because Nokia "believe[d] that it holds granted and/or pending applications for [P]atents, the use of which would be required to implement the" identified Asserted Standard. *See, e.g.*, Counterclaims, D.I. 11, Exs. D at 1-2, F at 1-2, G at 1-2, H at 1-2, I at 1-2, J at 1-2.  Because HP "may plead claims or defenses in the alternative or ones that are consistent with one another," *CrowdStrike, Inc. v. NSS Labs, Inc.*, No. CV 17-146 (MN), 2018 WL 6716094, at *3 (D. Del. Dec. 21, 2018) (citing *Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997)), HP need not establish or assert actual essentiality at the pleading stage.

Union."  Counterclaims, D.I. 11 ¶ 1 (emphasis added).  HP also asserts that Nokia (and its

parent, Nokia Corporation) was involved in developing the Asserted Standards, and as part of its

participation in setting the standards and efforts seeking patent protection, that it expressly

disclosed the Asserted Patents as essential or potentially essential to the ITU-T.  *See id.* ¶¶ 28-35,

41, 47, 53, 55, 61, 67, 69, 75, 81, 87, 93, 99.  HP also describes its negotiation with Nokia in

which Nokia represented that the relevant portfolios (which include the Asserted Patents)

consisted of patents essential to the Asserted Standards.  *Id.* ¶¶ 100-113.  Nokia's Motion would

have the Court ignore these well-pleaded allegations.

 Nokia's own Complaint alleges essentiality of the Asserted Patents to the Asserted

Standards as a basis for its claims.  Compl., D.I. 1 ¶¶ 65 ("Because at least ***Claim 7 of the '808***

***patent is essential to the H.264 Standard***, the Accused Products' incorporation of the H.264

Standard infringes at least Claim 7 of the '808 patent.") (emphasis added), 83 ('134 patent), 104

('818 patent), 130 ('714 patent), 153 ('267 patent), 175 ('991 patent), 198 ('321 patent), 221

('469 patent), 244 ('599 patent), 268 ('273 patent).  Likewise, Nokia alleges infringement of

each of the Asserted Patents by relying almost exclusively on citations to standard documents for

the Asserted Standards.  *See generally*, Compl., D.I. 1, Exs. 12-20, 22.  Nokia further describes

its purported "Investment in ***Video Coding Standards*** and Resulting Patents" (Compl., D.I. 1

¶¶ 16-24) (emphasis added) and its purported "***Compliance with the ITU Common Patent***

***Policy*** and Nokia's Relevant Declarations" (*id.* ¶¶ 25-38) (emphasis added).  Nokia represented

to HP during the years-long negotiation that preceded this litigation that it has many patents,

including the Asserted Patents and their family members, that are essential to the Asserted

Standards.  For example, Nokia provided HP with claim charts that purportedly showed

infringement of Nokia's patents based on HP's products implementing the Asserted Standards.

None of Nokia's cited cases supports dismissal of HP's claims at the pleading stage. Nokia cites two opinions at the summary judgment stage in which summary judgment was granted for insufficient evidence following discovery, not based on simply pleading essentiality. *See* Opening Br., D.I. 19 at 6 (citing *Koninklijke KPN N.V. v. Sierra Wireless, Inc.*, No. 17-cv-90-LPS, 2020 WL 1891454, at *2 (D. Del. Apr. 16, 2020)[8]; *3G Licensing, S.A. v. HTC Corp.*, No. 1:17-cv-00083-LPS (D. Del. Oct. 2, 2020), D.I. 489 at 7).  In *3G Licensing*, a case quoted by Nokia, the court emphasized the factual, merits-based nature of the essentiality determination: "essentiality depends on objective findings, i.e., whether practicing the relevant standard ***in fact*** infringes the asserted patents and whether non-infringing alternatives ***in fact*** exist."  *3G Licensing*, D.I. 489 at 7 (emphasis in original); *see also* Opening Br., D.I. 19 at 6 n. 3.  And *TQ Delta* is inapplicable here, as it involved the timing of disclosing infringement allegations based on essentiality in contentions and expert reports, not the sufficiency of a pleading.  *TQ Delta, LLC v. Adtran, Inc.*, No. 14-cv-954-RGA, 2021 WL 3633637, at *3 (D. Del. Aug. 17, 2021).  Finally, Nokia cites to a portion of a hearing transcript in *u-blox v. Interdigital* (S.D. Cal. Aug. 9, 2023), but the court's comments there did not form the basis of its ultimate ruling.  Opening Br., D.I. 19 at 6-7.  Indeed, not only did that case involve a different issue, but Nokia is effectively asking this Court to allow it to "have it both ways" by pleading essentiality and relying on standards for alleging and proving essentiality, while preventing HP from asserting non-essentiality and non-infringement.  None of Nokia's legal authority supports such a result.

---

[8] The defendant in *Sierra Wireless* did not affirmatively assert in its counterclaims that KPN's patent was, in fact, essential to the standard, instead referring in its counterclaims to statements SEP owner KPN itself made that the patent was essential.  *See generally Koninklijke KPN N.V. v. Sierra Wireless, Inc.*, No. 17-cv-90-LPS (D. Del. June 2, 2017), D.I. 16 (redacted answer and counterclaims).

### C.     ITU-T Language Does Not Bar HP's Breach of Contract Claim (Nokia Seeking Injunctions and Unilaterally Abandoning Negotiations) (Applicable to Count II)

The Court should reject Nokia's argument (Opening Br., D.I. 19 at 7) that HP's breach of contract claim, arising from Nokia seeking injunctive relief and unilaterally abandoning negotiations with willing-licensee HP (Count II), fails as a matter of law.  As the moving party, Nokia has the burden to show that HP's breach of contract claim is legally foreclosed, but the sole case upon which Nokia relies does not support its position.[9]  The Federal Circuit in *Apple v. Motorola* merely stated that there is no per se rule against injunctions for infringement of SEPs. 757 F.3d 1286, 1331 (Fed. Cir. 2014).  *Apple* does not stand for the proposition that an SEP owner unilaterally terminating negotiations and pursuing injunctive relief to obtain supra-FRAND royalties—as Nokia has done here—cannot, as a matter of law, give rise to a breach of contract claim.[10]

HP sufficiently pleads its breach claim by alleging that (1) Nokia entered into an express or implied contract[11] with ITU-T and with third-party beneficiaries, such as HP (Counterclaims,

---

[9] In addition to one legal opinion, Nokia cites to the 2019 *Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments*, Opening Br., D.I. 19 at 10-11 n. 7.  First, this document was not referenced in the Counterclaims and should not be considered on a motion to dismiss.  *See Winer Fam. Tr. v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).  But even if it may be considered, this policy statement is irrelevant—it was ***expressly withdrawn*** on June 8, 2022 by the Department of Justice, the U.S. Patent and Trademark Office, and the National Institute of Standards and Technology.  *See* https://www.uspto.gov/sites/default/files/documents/SEP2019-Withdrawal.pdf.

[10] Indeed, the injunction factors outlined in *eBay* are fact-intensive and are frequently unsuitable for a determination at the pleading stage.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) (citing *Roche Products* v. *Bolar Pharm. Co.*, 733 F.2d 858, 865 (Fed. Cir. 1984) (recognizing the "considerable discretion" district courts have "in determining whether the facts of a situation require it to issue an injunction")).

[11] Nokia declared to ITU-T that it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and ***on reasonable terms and conditions***…" *See, e.g.*, Counterclaims, D.I. 11 at Ex. E (emphasis added).  To date, Nokia has failed to provide an offer to a license "on a worldwide, non-discriminatory basis and on reasonable terms and

-13-

D.I. 11 ¶¶ 122-123; *see also id.* ¶¶ 22-99); (2) Nokia breached and continues to breach its contractual obligations by unilaterally terminating pre-suit negotiations with HP and refusing to provide a FRAND-compliant royalty rate to HP and instead seeking injunctive relief (including in international jurisdictions and on an ***ex parte*** basis) against willing licensee HP (*id.* ¶¶ 124-125; *see also id.* ¶¶ 100-113); and (3) HP has been injured by Nokia's conduct (*id.* ¶¶ 126-127). These allegations set forth a cognizable claim for breach of contract.

### D.  Nokia's Arguments Against HP's Unenforceability Counterclaim Similarly Fail (Applicable to Count III)

Nokia argues that HP's request for a declaration of unenforceability of the Asserted Patents as to the Asserted Standards fails because HP does not plead or concede that those patents are essential to those standards.  Nokia's argument fails for the reasons identified above, as HP was not required to so plead or concede.

As HP alleges in its counterclaims, "Nokia purports to own patents that are essential to the Asserted Standards," and the ITU Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC (*see* Counterclaims, D.I. 11 at Ex. B) requires disclosure to ITU-T "from the outset" when the patents "***may*** relate to Recommendations | Deliverables under development."  *Id.* ¶¶ 6, 19 ("prompt disclosure of members' IPR, including any IPR that may be included in a technical proposal or ***that may*** be incorporated into the specification of the standard in development"); *id.* at Ex. B, §§ 1, 3.[12]  Thus, HP alleges a duty of disclosure because the Asserted Patents are ***purported by Nokia*** to be "essential to the Asserted Standards," and thus, are patents that "may be incorporated into the specification of the standard."  *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1018 (Fed. Cir. 2008) (analyzing the ITU-T's and MPEG's

---

conditions."  *See* Counterclaims, D.I. 11 ¶¶ 2-5, 100-113.  There is a factual and legal dispute whether Nokia offered a FRAND-compliant offer to HP.

[12] While *Core Wireless* involved ETSI, the ITU policy includes similar "may" language.

Joint Video Team (JVT) IPR policy for the H.264 standard and applying a "reasonably might be necessary" standard for a party's disclosure of patents to the SSO). There is no requirement that, in order for this duty to disclose to arise, the claims must be found to be essential at any time, let alone at the pleading stage. HP sufficiently pleads a claim of unenforceability. *See id.* at 1024-26.

But Nokia also appears to misapprehend that HP's unenforceability claim is based on Nokia's own implied waiver of its patent rights as to those standards. Counterclaims, D.I. 11 ¶¶ 133-137. Specifically, Nokia's waiver of its right to enforce its patent in the SEP context requires (1) a duty of disclosure, (2) a breach of that duty, and (3) misleading conduct that led the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, all of which HP pleads. *See Core Wireless Licensing SARL v. Apple Inc.*, 899 F.3d 1356, 1367 (Fed. Cir. 2018). Nokia implies that its duty of disclosure attached only to patent claims that are "required to practice or implement" the standards (Opening Br., D.I. 19 at 8), but that is incorrect—as HP's Counterclaims make clear, the ITU-T duty of disclosure did not require ***actual proof of essentiality***.

### E.  HP Alleges a Cognizable Antitrust Claim Under Section 2 of the Sherman Act (Applicable to Count IV)

Nokia argues HP's Section 2 counterclaim (1) fails to allege anticompetitive conduct with particularity, and (2) fails to allege a relevant market. The Court should reject each argument. Nokia attempts to cast doubt on the viability of Third Circuit law described in *Broadcom v. Qualcomm*, but Nokia misrepresents the law in this District. *Broadcom* remains good law.

#### 1.  HP Sufficiently Pleads All Elements Required By Broadcom v. Qualcomm

As Nokia concedes (Opening Br., D.I. 19 at 8-9), the Third Circuit recognizes there is "actionable anticompetitive conduct" in the context of an SDO (standard-determining

organization) where "a patent holder's intentionally false promise to license essential proprietary

technology on FRAND terms" is "coupled with an SDO's reliance on that promise when

including the technology in a standard," and the patent holder breaches that promise. *Broadcom*,

501 F.3d at 314.[13]  But Nokia misrepresents the law in suggesting that *Broadcom* is no longer

good law.  Indeed, the more recent opinion by Judge Stark in *Lenovo v. Interdigital* confirms that

*Broadcom* is the controlling law in this District, including in view of the same cases Nokia raises

in its Motion (Opening Br., D.I. 19 at 9).  *See Lenovo (United States) Inc. v. Interdigital Tech.*

*Corp.*, No. 20-493-LPS, 2021 WL 1123101, at *7 n. 3 (D. Del. Mar. 24, 2021) ("Several of the

authorities on which IDC relies for its contrary view are from outside of the Third Circuit and do

not follow *Broadcom*, which is binding on this Court."); *see also id.* at *9-11, *16-17 (citing

*FTC*, 969 F.3d at 1005; *Continental Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 735

(N.D. Tex. 2020)).

     In *Lenovo*, Judge Stark denied InterDigital's motion to dismiss Lenovo's Section 2 claim

because Lenovo's complaint was similar to the complaint found sufficient in *Microsoft Mobile*,

which itself was consistent with *Broadcom*.  *Lenovo*, 2021 WL 1123101, at *7 (citing *Microsoft*

---

[13] While Nokia characterizes *Broadcom* as "narrow," *Broadcom* has not been overturned or narrowed.  For example, the *FTC v. Qualcomm* Court did not "call[] into question" the *Broadcom* decision.  Rather, the Court acknowledged that *Broadcom* held that "Qualcomm's 'intentionally false promise to license [its SEP] on FRAND terms … coupled with an SDO's reliance on that promise' and Qualcomm's subsequent discriminatory pricing sufficiently alleged 'actionable anticompetitive conduct' under § 2 to overcome Qualcomm's motion to dismiss," but deferred to the district court's finding of no intentional deception of SSOs or discriminatorily higher royalty rates.  *FTC v. Qualcomm*, 969 F.3d 974, 996-97 (9th Cir. 2020).  Nokia's other cited cases fare no better.  As explained further below, *Rambus* did not overturn *Broadcom* or dismiss claims at the pleading stage, and *Continental Automotive* is outside this Circuit and was expressly rejected in *Lenovo*.  *See* Opening Br., D.I. 19 at 9, n. 6 (citing *Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008); *Cont'l Auto.*, 485 F. Supp. 3d at 735).  Nokia's citations to academic papers carry little, if any, weight about *Broadcom's* applicability.  *See id.*

-16-

*Mobile Inc. v. InterDigital, Inc.*, No. 15-723-RGA, 2016 WL 1464545, at *2 (D. Del. Apr. 13, 2016)).  In particular, Judge Stark stated:

> Lenovo alleges what *Broadcom* requires: that InterDigital lied to ETSI about its commitment to FRAND licensing in order to obtain the benefit of SEP status for its patent portfolio, thereby unlawfully obtaining market power which InterDigital now seeks to exploit for its own gain.  These allegations plausibly state a claim for Section 2 antitrust liability.

*Id.* at *7.  Judge Stark cited paragraph 61 of Lenovo's complaint, which alleged InterDigital "submitted declarations to ETSI declaring that certain of its patents or patent applications may be or become essential to the Cellular Standards under consideration," and listing relevant declarations.  *Id.* (citing *Lenovo (United States) Inc. v. InterDigital, Inc.*, No. 20-493-LPS, D.I. 1 ¶ 61)).

Here, HP sufficiently pleads a Section 2 claim under *Broadcom* because HP alleges Nokia lied to ITU about its commitment to FRAND licensing to obtain the benefit of SEP status for its patent portfolio, and has thus unlawfully obtained market power, which it now seeks to exploit for its own gain.  For example, HP alleges with respect to unlawfully obtaining market power:

> Upon information and belief, ***Nokia Corporation withheld its patents to induce JVT/ITU members to incorporate technology it believed was covered by its patents into the H.264 and H.265 Standards***—but without providing those members with the ability to consider those alleged patent rights before the H.264 and H.265 Standards were frozen.  If Nokia Corporation had satisfied its contractual obligations and timely disclosed its rights in the Asserted Patents, ***the JVT/ITU may have been able to adopt alternative technologies or decline to include the relevant functionality in the final standard***.  By failing to disclose its rights in the Asserted Patents before the H.264 and H.265 Standards were frozen, ***Nokia deprived members of the JVT/ITU of the ability to consider those options and has harmed HP and others*** who have since implemented the H.264 and H.265 Standards.

Counterclaims, D.I. 11 ¶ 29 (emphasis added).  More specifically, HP alleges that Nokia, "[a]s a member of the ITU-T during the standardization process … participated in the development of the Asserted Standards … [and] advocated for certain technical proposals to be included in the Asserted Standards" even though Nokia "was aware that it advocated for technical proposals for which it had [intellectual property rights.]"  *Id.* ¶ 141.  After the standards were "frozen," only then did Nokia declare the Asserted Patents essential to the Asserted Standards, creating "lock-in," a situation in which "any implementer of the standard must practice the SEPs by practicing the standard" and "SEP owners can seek to exclude implementers from practicing the *entire standard*—not merely the claimed invention—or demand supra-competitive royalties not tied to the value of the actual *ex ante* value of the invention."  *Id.* ¶17; *see also id.* ¶¶ 15-16, 18-27; 36-99 (describing Nokia's untimely declarations to ITU after the Asserted Standards were "frozen," or adopted).  Once Nokia unlawfully obtained this market power, HP alleges that while HP was (and is) "a willing licensee and participated in negotiations in good faith," "Nokia repeatedly engaged in bad-faith negotiations and gamesmanship in a blatant attempt to extract royalty payments far exceeding FRAND terms for Nokia's declared SEPs."  *Id.* ¶ 2; *see also id.* ¶ 3-5.  Under *Broadcom*, HP's pleadings are sufficient, and it is not necessary—as Nokia suggests—to *prove* anticompetitive conduct.

### 2.     HP Is Not Required to Affirmatively Allege That Nokia's Asserted Patents Are Essential to the Asserted Standards

As explained above with respect to HP's breach of contract counterclaims, Nokia alleges in its Complaint and has alleged during pre-suit negotiations that its patents are essential to the Asserted Standards.  For the reasons explained above, just as HP is not required to concede essentiality at the pleading stage for the breach of contract claims, it is not required to concede essentiality to plead a Section 2 antitrust claim.

-18-

Nokia's cited case (Opening Br., D.I. 19 at 11), which is not binding on this Court, does not support Nokia's argument—rather, it supports HP.  In that case, the court found that Apple's allegations that Samsung engaged in monopoly conduct arising from false FRAND declarations and licensing practices terms failed to meet the heightened pleading standard because Apple did not identify the specific patents or FRAND declarations at issue.  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 4948567, at *4 (N.D. Cal. Oct. 18, 2011).  Here, HP identified the specific patents, FRAND declarations, and untimely disclosures at issue (*see* Counterclaims, D.I. 11 ¶¶ 28-99)—and Nokia itself asserts that *all* of the Asserted Patents are essential to the Asserted Standards.  *See* Compl., D.I. 1 ¶¶ 65, 83, 104, 130, 153, 175, 198, 221, 244, 268; *see also* Counterclaims, D.I. 11 ¶¶ 2, 6.  *Apple v. Samsung* does not hold that a party must "affirmatively allege[]" or concede essentiality in a pleading in order to state a Section 2 claim.

> **3.      HP Pleads Anticompetitive Conduct With Sufficient Particularity, As Required by Broadcom**

The Court should also reject Nokia's argument that, at the pleading stage, HP is required to "*specifically identif[y]* [the] *competing alternative*" that the ITU-T rejected in favor of Nokia's purported contributions.  Opening Br., D.I. 19 at 11-12.  Again, relying exclusively on opinions outside of this Circuit and District, Nokia seeks to apply requirements that exceed the requirements in *Broadcom v. Qualcomm*.[14]

---

[14] While Nokia argues that Section 2 claims based on allegedly fraudulent statements to SDOs requires Rule 9(b)'s heightened pleading standards (Opening Br., D.I. 19 at 10-11 n. 7), Rule 9(b) is satisfied in this context where the claims include declarations to the SDO that "identify when the false FRAND declarations were made, by whom, and for which patents." *Microsoft Mobile*, 2016 WL 1464545, at *4.  HP meets that burden.  *See* Counterclaims, D.I. 11 ¶¶ 28-99; *id.* at Exs. D-J.

Judge Andrews's opinion in *Microsoft Mobile v. InterDigital* is instructive.  In that case, Microsoft asserted a Section 2 claim against InterDigital for InterDigital's "'intentional false promise that [it] would license its … technology on FRAND terms on which promise [ETSI] relied in choosing the … technology for inclusion in the' relevant standards," but "[f]ollowing the incorporation of its technology, … [InterDigital] refused to comply with its FRAND licensing obligations." *Microsoft Mobile*, 2016 WL 1464545, at *2.  Judge Andrews concluded that "[t]hese allegations are sufficient to show anticompetitive conduct." *Id.*

Similar to *Microsoft Mobile*, HP here alleges, on a patent-by-patent basis, the dates by which the technology purportedly covered by Nokia's Asserted Patents (based on Nokia's infringement claims) was frozen in the standard and Nokia's delay in declaring the Asserted Patents as essential to those standards until after the standards were frozen.  *See* Counterclaims, D.I. 11 ¶¶ 28-99.  HP further alleges that by delaying its declarations of the patents or patent applications as essential to the Asserted Standards, "Nokia was able to remove competitors and their technology from the Relevant Markets," and that "despite knowing its patented technology was being considered, … Nokia waited until after the standards were frozen to declare to the ITU-T its purported SEPs." *Id.* ¶¶ 142-144.  HP also alleges it has been injured by Nokia's refusal to comply with its FRAND commitments and by Nokia's global litigation campaign seeking to enjoin HP from the relevant market.  *See id.* ¶¶ 100-113.  Under *Broadcom* and *Microsoft Mobile*, HP sufficiently pleads a Section 2 claim.

Ignoring well-settled law in this District, Nokia cites inapposite and distinguishable cases in other districts.  In *Townshend*, the patent owner informed the ITU that it had pending patent applications covering the relevant technology *before* the standard was frozen, whereas here Nokia concealed its applications until *afterwards*.  *See Townshend v. Rockwell Int'l Corp.*, No.

-20-

C99-0400SBA, 2000 WL 433505, at *11 (N.D. Cal. Mar. 28, 2000); *see also* Counterclaims, D.I. 11 ¶¶ 28-99.  If anything, the present case is similar to *In re Dell*—which the *Townshend* Court distinguished—because of Nokia's late disclosure.

Likewise, *Rambus* involved an appeal to the D.C. Circuit after a final order from the Federal Trade Commission, including after reopening the record to receive additional evidence. *Rambus*, 522 F.3d at 458-61.  But not only is *Rambus* not from this circuit, it also involved a final order from the FTC *after* discovery, not at the motion to dismiss stage.  (Indeed, in *Apple v. Samsung*, cited by Nokia, the court recognized that "*Rambus* identified a failure of proof, not a failure of pleading."  *Apple*, 2011 WL 4948567, at *5.)  Similarly, *Apple v. Samsung* is also not binding on this Court and, unlike here, involved a failure to identify any patent declarations that were at issue.  *Id.*

HP sufficiently pleads anticompetitive conduct under Third Circuit law.

### 4.      HP Sufficiently Pleads a Relevant Market

HP alleges that the "relevant market includes products that implement or support the functionality described in the Asserted Standards."  Counterclaims, D.I. 11 ¶ 139.  As surrounding paragraphs in the Counterclaims make clear, this market is one of technology.  For example, the next paragraph of HP's counterclaims recited that "the ***Relevant Markets contained*** competing ***technologies*** that could perform the same or equivalent functions purportedly claimed in Nokia's SEPs for the Asserted Standards."  *Id.* ¶ 140 (emphasis added).  Likewise, HP alleges that Nokia, "by delaying its IPR declarations to the ITU-T, Nokia was able to ***remove competitors and their technology from the Relevant Markets***, while ensuring ***its patented technology*** would remain, thus creating a monopoly in the Relevant Markets."  *Id.* ¶ 142 (emphasis added); *see also id.* ¶¶ 143 ("license its ***patents in the Relevant Markets***") (emphasis added), 144 ("***license technology in the Relevant Markets***" and "claiming its ***patents are***

-21-

***essential to the Relevant Markets***, as it purports in this suit") (emphasis added).[15]  This is a properly defined relevant market.  *See, e.g.*, *Lenovo*, 2021 WL 1123101, at *8 ("Lenovo does adequately define an alleged relevant market.  The complaint specifies that 'the relevant markets are the markets for technologies covered by the IDC patents issued in the United States that are essential, or are alleged to be essential, to the Cellular Standards, together with all other alternative technologies to the IDC SEPs that could have been used in the Cellular Standards.'").  Similar to HP's alleged definition of the "relevant market," Lenovo's market definition included technologies covered by patents relevant to the standards at issue.[16]

Nokia's argument that HP is identifying a "physical product market" that "is completely divorced from the alleged anticompetitive conduct described in [the] counterclaim" (Opening Br., D.I. 19 at 13) ignores that the Relevant Market definition includes the implementation and support for the functionality of the Asserted Standards (*i.e.*, H.264 and H.265), which is technological.  Counterclaims, D.I. 11 ¶ 139.[17]

## VI.    CONCLUSION

The Court should deny Nokia's Motion to Dismiss.  If, however, the Court dismisses one or more of HP's Counterclaims, HP respectfully requests leave to amend any such counterclaim.

---

[15] Of note, Nokia seeks to license its SEPs, including the Asserted Patents, using a "per unit" royalty for products HP sells.

[16] Nokia cites *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) for a general statement on the law for defining the relevant market.  *See* Opening Br. at 13.  But Nokia fails to identify the relevance of *Queen City*, including how HP purportedly failed to define its proposed relevant market "with reference to the rule of reasonable ***interchangeability*** and ***cross-elasticity of demand***, or allege[d] a proposed relevant market that clearly does not encompass all ***interchangeable substitute products***."  *Id.* (quoting *Queen City*, 124 F.3d at 436) (emphasis added).

[17] Nokia does not make any specific arguments with respect to Count VII (common law fraud).  However, it states in footnote 8 that common law fraud is "premised on the same theories" as Count IV.  For this reason, Nokia's arguments with respect to Count VII should be rejected for the same reasons as discussed herein for Count IV.

Dated: February 15, 2024

Respectfully submitted,

By:    */s/ John V. Gorman*

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302.574.3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Brent A. Hawkins (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower, 28th
Floor
San Francisco, CA 94105-1596
brent.hawkins@morganlewis.com
Telephone: 415.442.1449

David Levy (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Suite 4000
Houston, TX 77002-5006
david.levy@morganlewis.com
Telephone: 713.890.5170

Kevin J. Post (*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
T: 212.596.9000
kevin.post@ropesgray.com

***Attorneys for Defendant HP, Inc.***

132293062_1