# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| **NOKIA TECHNOLOGIES OY,**<br><br>     **Plaintiff,**<br><br> v.<br><br>**HP, INC.,**<br><br>     **Defendant.** | Civil Action No. 23-cv-1237-GBW |

## PLAINTIFF NOKIA TECHNOLOGIES OY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT/COUNTERCLAIMANT HP, INC.'S COUNTERCLAIMS

Dated:  February 29, 2024

**MCKOOL SMITH, P.C.**

Warren H. Lipschitz (admitted *pro hac vice*)
Alexandra F. Easley (admitted *pro hac vice*)
300 Crescent Ct. Ste. 1200
Dallas, TX 75224
Tel.: (214) 978-4000
wlipschitz@mckoolsmith.com
aeasley@mckoolsmith.com

R. Mitch Verboncoeur (admitted *pro hac vice*)
303 Colorado St Suite 2100
Austin, TX 78701
Tel.: (512) 692-8700
mverboncoeur@mckoolsmith.com
J
osh Newcomer (admitted *pro hac vice*)
600 Travis St., Suite 7000
Houston, Texas 77002
Tel.: (713) 485-7300
jnewcomer@mckoolsmith.com

Kevin Burgess (admitted *pro hac vice*)
104 East Houston St., Suite 300
Marshall, Texas 75670
Tel.: (903) 923-9000
kburgess@mckoolsmith.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan ( Bar No. 5165)
**FARNAN LLP**
919 N. Market St. 12th Floor
Wilmington DE 19801
Tel.: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**ALSTON & BIRD LLP**

Theodore Stevenson, III (admitted *pro hac vice*)
2200 Ross Ave. #2300
Dallas, TX 75201
Tel.: (214) 922-3400
ted.stevenson@alston.com

John D. Haynes (admitted *pro hac vice*)
Nicholas T. Tsui (admitted *pro hac vice*)
Shawn Gannon (admitted *pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000
john.haynes@alston.com
nick.tsui@alston.com
shawn.gannon@alston.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.    Introduction.................................................................................................................... 1

II.    Argument ....................................................................................................................... 1

    A.    HP Failed to Plead Essentiality of the Implicated Patent Claims, Which is a Necessary Element of All Seven Counterclaims. (Counts I–VII.)..................................................... 1

    B.    HP's Counterclaims Fail for Additional, Claim-Specific Reasons................................ 6

        1. Nokia did not breach its ITU-T commitments by seeking injunctions. (Count II.) ... 6

        2. HP's unenforceability counterclaim is unsupported by the law. (Count III.) ............ 6

        3.  HP's antitrust claim fails to plead necessary facts. (Count IV.)................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3G Licensing, S.A. v. HTC Corp.*,
　C.A. No. 17-cv-83-LPS (D. Del. Oct. 2, 2020), D.I. 489 ............................................................4

*AG v. Interdigital, Inc.*,
　No. 3:23-cv-2, 2023 U.S. Dist. LEXIS 139012 (S.D. Cal. Aug. 8, 2023) .................................5

*AG v. Interdigital, Inc.*,
　No. 3:23-cv-2 (S.D. Cal. Aug. 9, 2023), D.I. 50 .......................................................................5

*Amneal Pharms. LLC v. Indivior Inc.*,
　2017 WL 36371 (E.D. Pa. Jan. 4, 2017) ....................................................................................8

*Apple Inc. v. Samsung Elecs. Co.*,
　2012 WL 1672493 (N.D. Cal. May 14, 2012) .........................................................................10

*Apple Inc. v. Samsung Elecs. Co.*,
　No. 11-CV-01846, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ..................................3, 5, 10

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................................................8, 9

*ChriMar Sys. v. Cisco Sys.*,
　72 F. Supp. 3d 1012 (N.D. Cal. 2014) ..................................................................................9, 10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
　899 F.3d 1356 (Fed. Cir. 2018) ..................................................................................................7

*IBM v. Priceline Grp., Inc.*,
　No. 15-cv-137, 2017 WL 1349175 (D. Del. Apr. 10, 2017) .....................................................7

*Koninklijke KPN N.V. v. Sierra Wireless, Inc.*,
　No. 17-cv-90, 2020 WL 1891454 (D. Del. Apr. 16, 2020) .......................................................4

*Lenovo U.S. v. Interdigital Tech. Corp.*,
　No. 20-cv-493, 2021 U.S. Dist. LEXIS 56571 (D. Del. Mar. 24, 2021) ..............................9, 10

*Microsoft Mobile, Inc. v. InterDigital, Inc.*,
　No. 15-cv-723, 2016 WL 1464545 (D. Del. Apr. 13, 2016) ................................................9, 10

*Qualcomm Inc. v. Broadcom Corp.*,
　548 F.3d 1004 (Fed. Cir. 2008) .......................................................................................... passim

*Rambus Inc. v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008) ............................................................................................. 9, 10

*Townshend v. Rockwell Int'l Corp.*,
   No. C99-0400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) .......................................... 10

*Township of Spring v. Standard Ins. Co.*,
   497 F. App'x 211 (3d Cir. 2012) .............................................................................................. 6

**OTHER AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1282
   (4th ed. 2023) ........................................................................................................................... 1

I.  **Introduction**

HP, Inc. has failed to plead core factual allegations required to support its counterclaims. Faced with that reality, HP now argues that the ability to plead in the alternative somehow allows it to bootstrap another party's allegations without making allegations of its own. But HP's arguments, and the concept of pleading in the alternative, do not excuse a failure to ***plead all facts*** required to allege ***necessary elements*** of a counterclaim. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1282 (4th ed. 2023) ("The right to plead alternatively . . . does not sanction deviations from the basic obligation to plead comprehensibly."). HP's opposition fails to identify specific paragraphs of its own counterclaims that resolve the pleading deficiencies Nokia identified in its opening brief. For that reason, HP's counterclaims should be dismissed.

II. **Argument**

   A. **HP Failed to Plead Essentiality of the Implicated Patent Claims, Which is a Necessary Element of All Seven Counterclaims. (Counts I–VII.)**

Nokia asserted that HP has infringed claims from ten patents relating to the H.264 and H.265 video decoding standards (the "Nokia Asserted Claims"). In its Answer, HP expressly "***denies*** that Nokia has established that ***any claims*** of the Asserted Patents are, ***in fact, essential*** for compliance with the H.264 and H.265 Standards." (D.I. 11 at Answer ¶ 1 (emphasis added).) Nowhere does HP cite to a single instance where it either admitted, or affirmatively plead—even in alternative fashion—that ***any*** Nokia patent claims are essential. That is fatal to HP's counterclaims because essentiality is a necessary element of every claim that HP asserted here:

*First*, the three contract-based counterclaims (Counts I–II and V) relate to the ITU-T's RAND commitment. (D.I. 20 at 8.) But an SEP-holder's contractual RAND commitment attaches only to the patent claims that are ***actually*** essential to the ITU-T standards at issue. (D.I. 19 at 5.) The ITU-T Declaration Form defines "Patent" as "those ***claims*** contained in and identified by

1

patents . . . ***solely to the extent that any such claims are essential*** to the implementation of the relevant Recommendation | Deliverable." (D.I. 11, Counterclaim, Ex. B at Annex 3.) The ITU-T *Guidelines* similarly clarify that "by submitting [the Declaration Form], the Patent Holder declares its willingness to license its Patents . . . in case part(s) or all of any proposals contained in its Contributions . . . are included in Recommendation(s) and the included part(s) contain items for which Patents have been filed and whose licence ***would be required to practice or implement*** Recommendation(s)." (*Id.* at 6.)   HP's contract-based RAND counterclaims require it to affirmatively plead—as a necessary element—that the Nokia patent claims on which it is predicating its counterclaims (the "Implicated Claims") are, in fact, essential.

***Second***, HP's request for declaratory relief (Count VI) is also premised on the essentiality of the Implicated Claims related to the H.264 and H.265 standards: "HP requests a . . . determination of FRAND royalty terms for a license ***to Nokia's portfolio of SEPs that are essential to the Asserted Standards***." (Counterclaim ¶ 154 (emphasis added).) This declaratory relief also presupposes—without affirmatively alleging—that Implicated Claims are essential, such that the ITU-T RAND commitment attaches to those claims.

***Third***, HP's unenforceability counterclaim (Count III), as detailed below, likewise presupposes that Implicated Claims are, in fact, essential. (Counterclaim ¶ 135.)

***Fourth***, essentiality is also a necessary element of HP's antitrust and fraud-based counterclaims (Counts IV and VII). The Third Circuit ruled in *Broadcom Corp. v. Qualcomm Inc.* that an "intentionally false promise to license *essential* proprietary technology on FRAND terms" could be "actionable anticompetitive conduct" where the SDO "reli[ed] on that promise ***when including the technology in a standard***." 501 F.3d 297, 314 (3d Cir. 2007) (emphasis added). Following *Broadcom*, courts have recognized that essentiality is a necessary element of this

2

Section 2 antitrust theory. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2011 WL 4948567, at *4 n.6 (N.D. Cal. Oct. 18, 2011) ("If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications. If the patents at issue are non-essential, then the 'lock-in' effect of the standard setting does not exist."). The same is true for HP's fraud claim: if the Implicated Claims were not essential to the H.264 or H.265 standards, then HP could not credibly allege any harm from Nokia's alleged failure to disclose the patents covering the Implicated Claims to the ITU-T in connection with incorporating actually essential technology.

Because essentiality is a necessary element for each of HP's counterclaims, HP has the burden to affirmatively plead essentiality. But, even after being challenged on a motion to dismiss, HP fails to identify a single instance where it has plead that the Implicated Claims, or any Nokia patent claims, are essential. Instead, HP pivots to an argument that it need not "concede" or "prove" essentiality. Although HP is wrong, the issue at the motion to dismiss stage is whether HP has adequately plead the essential elements of its counterclaims. (D.I. 20 at 9–12.) The sole case that HP relies on to suggest that a claimant need not plead essentiality to assert a breach-of-FRAND claim is the district court decision in *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktenbologet LM Ericsson*—a case where the final judgment was overturned on appeal and where the parties consented to have the court determine FRAND license terms. 2014 WL 12588293, at 4 (C.D. Cal. Sept. 30, 2014). However, that case does not support HP's argument on its pleading requirements. To the contrary, the court in *TCL* recognized that all necessary elements must be alleged, but it held that "Ericsson ***represented that its patents are standard essential to ETSI and as such has obligated itself to offering FRAND terms for such patents***." *Id.* (emphasis added). Put differently, that court held (incorrectly) that the FRAND licensing commitment attached to all patents declared

3

as potentially essential to the standardized technology, so—under that construction of the FRAND commitment—the plaintiff in *TCL* met its pleading burden by alleging that the patents had been declared to the SDO. But that is not the law in Delaware. In fact, the District of Delaware rejected the *TCL* court's rationale and explicitly held the FRAND commitment does not attach to all declared patents; rather, the FRAND licensing commitment attaches exclusively to essential patent claims. *See Koninklijke KPN N.V. v. Sierra Wireless, Inc.*, No. 17-cv-90, 2020 WL 1891454, at *2 (D. Del. Apr. 16, 2020) (Stark, J.) (finding that the ETSI and TIA FRAND commitments "do not bind KPN if its '662 patent is not essential"). And, as set forth above, the ITU-T's RAND licensing requirement similarly attaches only to *essential* patent claims and not to all declared patents. Under Delaware law (and even the pleading framework set forth in *TCL*), HP is required to affirmatively plead essentiality (not just an act of declaration that patent claims *may become essential*) as a necessary element of its RAND-based counterclaims.

HP also suggests that it need not allege essentiality because *Nokia* has contended in its Complaint and during licensing negotiations that Nokia Asserted Claims (which, notably, represent only a small portion of the Implicated Claims in HP's counterclaims) are essential. (D.I. 20 at 10–11.) But HP cannot meet its own pleading burden by merely pointing to Nokia's positions. The District of Delaware already rejected HP's argument that a party seeking to enforce a FRAND commitment can rely upon the other party's representations as to essentiality to satisfy its burden on that necessary element. *See 3G Licensing, S.A. v. HTC Corp.*, C.A. No. 17-cv-83-LPS (D. Del. Oct. 2, 2020), D.I. 489 at 7 (granting summary judgment on defendants' FRAND defense because "[p]ointing to Plaintiffs' beliefs on these points . . . is insufficient to meet Defendants' burden").

HP attempts to distinguish this clear authority by incorrectly asserting that no cases impose such a burden at the pleading stage. That is not so. *See, e.g.*, *Apple*, 2011 WL 4948567, at *4

(granting motion to dismiss Section 2 antitrust counterclaim for pleading defects). Moreover, a court recently dismissed a breach-of-FRAND claim, and an accompanying request for declaratory relief, *at the pleading stage* because the plaintiff failed to plead the essentiality of claims in the patents at issue. *u-blox AG v. Interdigital, Inc.*, No. 3:23-cv-2 (S.D. Cal. Aug. 9, 2023), D.I. 50. In its Opposition, HP argues that "the [*u-blox*] court's comments [at the motion to dismiss hearing] did not form the basis of its ultimate ruling." (D.I. 20 at 12 n.8.) That is false. The *u-blox* court expressly stated in its order on the motion to dismiss:

> On August 8, 2023, the Court held a hearing on Defendants' motion to dismiss. []. For the reasons stated on the record . . . . Defendants' motion to dismiss based on breach of contract and declaratory judgment for setting FRAND terms and conditions is GRANTED with leave to amend. Plaintiffs [may] . . . file their first amended complaint, *alleging both* (1) the *conforming products* they create *and* (2) *the [SEPs] they utilize that are covered by the IPR policy*.

*u-blox AG v. Interdigital, Inc.*, No. 3:23-cv-2, 2023 U.S. Dist. LEXIS 139012, at *1–2 (S.D. Cal. Aug. 8, 2023) (emphases added). Not only did the *u-blox* court explicitly adopt the reasoning it articulated in the hearing on the motion to dismiss, the court also made clear that in order to *plead* a FRAND-based claim, the pleading party must explicitly allege that the patent claims it is putting at issue are both essential and infringed.

Finally, HP argues it may both (i) deny essentiality in its Answer while (ii) alleging essentiality in the alternative in its counterclaims. (D.I. 20 at 10 & n.7.) But what HP omits is that it has *not affirmatively pled* essentiality in its counterclaims. Again, HP points to Nokia's allegations of essentiality in its Complaint—allegations HP expressly denied—and Nokia's alleged representations during licensing negotiations. (*Id.* at 10–11.) As demonstrated above, that is insufficient to satisfy its burden to affirmatively plead a necessary element of its counterclaims.

Because HP has failed to plead essentiality—a necessary element of all seven counterclaims—its counterclaims must be dismissed.

### B.  HP's Counterclaims Fail for Additional, Claim-Specific Reasons

**1. Nokia did not breach its ITU-T commitments by seeking injunctions. (Count II.)**

HP's Count II asserts a breach of contract counterclaim based generically on Nokia's acts of asserting its patents and seeking to enjoin unlicensed, infringing use.  HP seeks to flip the pleading burden on its head by arguing that the "ITU-T language does not bar" its counterclaim. (D.I. 20 at 13–14.) But HP—not Nokia—bears the burden of pleading a specific contractual provision that Nokia allegedly breached.  *See, e.g.*, *Township of Spring v. Standard Ins. Co.*, 497 F. App'x 211, 214 (3d Cir. 2012) (affirming dismissal of contract claim where plaintiff argued "nothing in [the contract] would have *prevented* the liquidation of the pension funds" and holding that the plaintiff "must, but cannot, identify a provision of the Contracts that *required* Standard to liquidate the funds"). HP alleges that Nokia has breached its "contractual obligations" to the ITU-T "by unilaterally terminating pre-suit negotiations with HP and . . . seeking injunctive relief." (D.I. 20 at 14.) But HP never identifies any contractual language in the ITU-T Common Patent Policy, Declaration Form, or *Guidelines*, that Nokia allegedly has breached by seeking injunctive relief. Nor can it, because no such language exists. (D.I. 19 at 7.) Because *HP* failed to allege the existence of an ITU-T **contractual prohibition** on seeking injunctions, Count II fails.

**2. HP's unenforceability counterclaim is unsupported by the law. (Count III.)**

HP suggests that the Court should declare as unenforceable Nokia's ***entire patent portfolio*** that is related to the H.264 and H.265 standards if the patents covering the Implicated Claims were untimely disclosed. (*See* D.I. 20 at 14–15; Counterclaim ¶ 137 (arguing that failure to disclose "the Asserted Patents . . . constitutes at least a waiver of [Nokia's] right . . . to enforce ***any*** claimed-essential patents against ***any*** entity practicing the H.264 and H.265 Standards, and renders the patents unenforceable against such standards" (emphasis added)).) In other words, HP argues that, under the ITU-T policy, if a patent contains any claims that "may" be essential, then the patent

6

must be disclosed and, if it is not disclosed, then the patent owner is foreclosed from enforcing all of the claims of that patent in any context—even if any or all of the claims are not actually essential. HP cites no support for this reading of the implied waiver theory. Instead, HP's cited caselaw actually undermines its argument. *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1368 (Fed. Cir. 2018) ("In the analogous case of implied waiver, which like inequitable conduct involves the breach of a disclosure duty, the same equitable considerations require either a showing of prejudice or egregious misconduct sufficient to justify the sanction of **unenforceability of the patent at issue**." (emphasis added)).[1]

What is more, the Federal Circuit has expressly rejected the notion that courts may declare patents unenforceable outside of a narrow set of uses related to the alleged misconduct at issue. In a case that HP cites in its Opposition, the Federal Circuit vacated an order—rendered in the context of **serious litigation misconduct** where a party wrongly denied participation in standard-setting and withheld hundreds of thousands of pages of discovery on that subject—that would have rendered patent claims declared as **potentially essential** to an SDO unenforceable even outside the context of compliance with the technical standard. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1026 (Fed. Cir. 2008). As the Federal Circuit recognized, where an unenforceability claim

---

[1] The Federal Circuit in *Core Wireless* analogized the implied waiver doctrine in the SDO context to "the doctrine of inequitable conduct discussed in *Therasense*." 899 F.3d at 1368. In *Therasense, Inc. v. Becton, Dickinson & Co.*, cautioned "the remedy for inequitable conduct is the 'atomic bomb' of patent law" that "can spread from a single patent to render unenforceable other related patents and applications in the same technology family." 649 F.3d 1276, 1288–89 (Fed. Cir. 2011) (en banc). Because charges of inequitable conduct had become "a common litigation tactic" the Federal Circuit "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1289–90. The same is true for unenforceability counterclaims premised on implied waiver. *Cf. IBM v. Priceline Grp., Inc.*, No. 15-cv-137, 2017 WL 1349175, at *8 (D. Del. Apr. 10, 2017) (noting that "the Federal Circuit and this Court have regularly dismissed inequitable conduct claims that failed to meet [the pleading] burden" of identifying the specific individuals that deliberately withheld material information from the patent application).

7

is based on "conduct before the [SDO] during development of the" standard, "the ***broadest permissible unenforceability remedy*** in the circumstances of the present case [involving serious litigation misconduct] would be to render the [] Patents . . . unenforceable ***against all H.264-compliant products***." *Id.* As a result, where the premise for an unenforceability claim is late disclosure to an SDO—even when the party withholds discovery and wrongly denies participating in the standardization—the Federal Circuit held that any unenforceability order cannot extend beyond standard compliance (*i.e.*, essentiality), something that HP has failed to allege. This Court, therefore, should dismiss HP's overbroad request for a declaration of unenforceability.

### 3. HP's antitrust claim fails to plead necessary facts. (Count IV.)[2]

The Third Circuit's ruling in *Broadcom* held only that certain antitrust claims in the SDO context may proceed under exceedingly narrow circumstances. *See Amneal Pharms. LLC v. Indivior Inc.*, 2017 WL 36371, at *8 (E.D. Pa. Jan. 4, 2017) (concluding that "*Broadcom* was decidedly narrow and its applicability is confined to its unique factual circumstances"). And *Broadcom* itself has not worn well over time, having been rejected in multiple circuits.[3] Although HP argues that *Broadcom* remains "controlling law" (D.I. 20 at 16), HP seeks its expansion. And that decision's narrow ruling on the pleading standards for a Section 2 claim was—at best—further cabined two years later by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the Supreme Court held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[2] In passing, HP asserts that Nokia's conduct was "an improper monopolization attempt that injured HP." (D.I. 20 at 5.) Because the counterclaims and HP's Opposition do not allege the necessary elements for an attempted monopolization claim—notably, "a specific intent to monopolize" and a "dangerous probability of achieving monopoly power"—this Court should reject this characterization. *Broadcom*, 501 F.3d at 317.

[3] (D.I. 19 at 9 & n.6.) Beyond this legal repudiation, HP concedes the *Broadcom* holding relied upon an FTC decision that was later reversed by the D.C. Circuit, as well as the patent hold-up theory which lacks empirical support. (D.I. 19 at 9 n.6.) These legal developments should give the Court pause before allowing HP's conclusory and inadequately pled Section 2 claim to proceed.

8

statements, do not suffice" to sustain a claim past the pleading stage. *Id*. at 678. In the nearly two decades since *Broadcom* was decided, numerous courts have applied *Iqbal* and Rule 9(b)'s heightened pleading standards to Section 2 claims based on allegedly fraudulent statements to SDOs.[4] Here, HP's counterclaim suffers from two crucial pleading defects.

***First***, a Section 2 claim under current pleading standards must specifically identify exclusionary conduct—in a *Broadcom* claim, that means a competing alternative technology that was excluded from the relevant market by the SDO's incorporation of patent claims at issue into the standard. (D.I. 19 at 11–12); *see also ChriMar Sys. v. Cisco Sys.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014) (dismissing Section 2 counterclaim because "Defendants fail to clearly allege that the IEEE would have adopted an alternative standard had it known about the '250 Patent," so "Defendants fail to sufficiently allege market power"). If no alternative technology was excluded, then the SDOs "would have standardized the very same technologies," so any "alleged deception cannot be said to have had an effect on competition." *Rambus Inc. v. FTC*, 522 F.3d 456, 466–67 (D.C. Cir. 2008). HP's attempt to distinguish this caselaw is unpersuasive. The parties did not raise the issue of whether a plaintiff must identify purportedly excluded technologies in the *Microsoft Mobile v. InterDigital* and *Lenovo v. InterDigital* cases.[5] Because that question was never before the Court, HP cites no "well-settled law in this District" on that point. (D.I. 20 at 20.) However, in multiple cases where the issue ***was*** raised, courts have squarely found that the party alleging a

---

[4] (D.I. 19 at 10 n.7.) Significantly, HP does not contest that Rule 9(b)'s heightened pleading standards apply. (D.I. 20 at 19 n.14.).

[5] *See generally Microsoft Mobile, Inc. v. InterDigital, Inc.*, No. 15-cv-723, 2016 WL 1464545 (D. Del. Apr. 13, 2016); *Microsoft Mobile, Inc. v. InterDigital, Inc.*, No. 15-cv-723 (D. Del. Nov. 4, 2015)) (D.I. 17) (Opening Br. in Support of Motion to Dismiss); *Lenovo U.S. v. Interdigital Tech. Corp.*, No. 20-cv-493, 2021 U.S. Dist. LEXIS 56571 (D. Del. Mar. 24, 2021); *Lenovo U.S. v. Interdigital Tech. Corp.*, No. 20-cv-493 (D. Del. June 22, 2020) (D.I. 8) (Opening Br. in Support of Motion to Dismiss).

Section 2 violation must identify the specific alternative technology that was excluded by the SDO's incorporation of the defendant's (undisclosed) patented technology into the standard. *See Apple Inc.*, 2011 WL 4948567, at *6 (Section 2 claim "failed to allege . . . a viable alternative technology . . . [that] would have been incorporated into the UMTS standard");[6] *Townshend v. Rockwell Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505, at *11 (N.D. Cal. Mar. 28, 2000) (Section 2 claimant "has not asserted that the ITU could have adopted a V.90 standard which did not encompass Townshend's technology"). HP's criticisms of *Rambus* are likewise unpersuasive: to be sure, it is out-of-circuit authority, but the D.C. Circuit expressly overturned an FTC precedent upon which the Third Circuit in *Broadcom* heavily relied. (D.I. 19 at 9 n.6.)

**Second**, HP has failed to plausibly plead a relevant market. The counterclaims defined the "Relevant Market" as a market for "***products*** that implement or support the functionality described in the Asserted Standards." (Counterclaim ¶ 139.) After realizing the error of its ways, HP now argues that multiple "Relevant ***Markets***" exist, including "one of technology." (D.I. 20 at 21.) But HP's counterclaims do not actually define a relevant ***technology*** market. *See, e.g.*, *ChriMar Sys.*, 72 F. Supp. 3d at 1018 ("Defendants argue that they defined the market as comprising the technologies that competed to perform the functions in the . . . standards allegedly covered by the [] Patent. ***But their counterclaims do not actually contain such allegations***. Accordingly, the Court finds that Defendants fail to sufficiently allege the relevant market." (citation omitted)).[7] The absence of a properly defined technology market in Count IV warrants dismissal.

---

[6] Importantly, Apple's counterclaim proceeded only after Apple amended beyond "mere conclusory statements" to identify specific "alternatives that the working group could have adopted to perform the same functionality as that performed by each Declared-Essential Patent asserted." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1672493, at *8 (N.D. Cal. May 14, 2012).

[7] This failure distinguishes HP's "Relevant Market" from those pleaded in *Lenovo*, 2021 WL 1123101, at *8 and *Microsoft Mobile Inc.*, 2016 WL 1464545, at *1–2.

10

Dated: February 29, 2024                    Respectfully submitted,

**FARNAN LLP**

*/s/ Brian E Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan ( Bar No. 5165)
919 N. Market St. 12th Floor
Wilmington DE 19801
Tel.: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**MCKOOL SMITH, P.C.**

Warren H. Lipschitz (admitted *pro hac vice*)
Alexandra F. Easley (admitted *pro hac vice*)
300 Crescent Ct. Ste. 1200
Dallas, TX 75224
Tel.: (214) 978-4000
wlipschitz@mckoolsmith.com
aeasley@mckoolsmith.com

R. Mitch Verboncoeur (admitted *pro hac vice*)
303 Colorado St Suite 2100
Austin, TX 78701
Tel.: (512) 692-8700
mverboncoeur@mckoolsmith.com

Josh Newcomer (admitted *pro hac vice*)
600 Travis St., Suite 7000
Houston, Texas 77002
Tel.: (713) 485-7300
jnewcomer@mckoolsmith.com

Kevin Burgess (admitted *pro hac vice*)
104 East Houston St., Suite 300
Marshall, Texas 75670
Tel.: (903) 923-9000
kburgess@mckoolsmith.com

**ALSTON & BIRD LLP**

Theodore Stevenson, III (admitted *pro hac vice*)
2200 Ross Ave. #2300
Dallas, TX 75201
Tel.: (214) 922-3400
ted.stevenson@alston.com

John D. Haynes (admitted *pro hac vice*)
Nicholas T. Tsui (admitted *pro hac vice*)
Shawn Gannon (admitted *pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000
john.haynes@alston.com
nick.tsui@alston.com
shawn.gannon@alston.com

*Attorneys for Plaintiff*