IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA TECHNOLOGIES OY, | | |
| Plaintiff, | | |
| v. | | C.A. No. 23-1237-GBW |
| HP, INC., | | |
| Defendant. | | |

Brian E. Farnan, Farnan LLP, Wilmington, DE; Warren H. Lipschitz, Alexandra F. Easley, R. Mitch Verboncoeur, Josh Newcomer, Kevin Burgess, MCKOOL SMITH, P.C., Dallas, TX; Theodore Stevenson, III, John D. Haynes, Nicholas T. Tsui, Shawn Gannon, ALSTON & BIRD LLP, Dallas, TX

*Counsel for Plaintiff*

John V. Gorman, Amy M. Dudash, Brent A. Hawkins, David Levy, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Kevin J. Post, ROPES & GRAY LLP, New York, NY

*Counsel for Defendant*

**MEMORANDUM OPINION**

April 29, 2024
Wilmington, Delaware

[signature]

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Plaintiff Nokia Technology OY's ("Nokia") partial motion to dismiss (a) Defendant HP, Inc.'s ("HP") request for declaratory relief and (b) HP's contract, unenforceability, and antitrust counterclaims. D.I. 18. For the reasons set forth below, the Court grants-in-part Nokia's motion to dismiss HP's antitrust counterclaims and denies-in-part the remainder of Nokia's motion.

## I. BACKGROUND

Nokia filed this action against HP and alleges that HP infringes certain claims of ten patents relating to the H.264 and H.265 video-decoding standards (the "Asserted Claims" of the "Asserted Patents," and the "Asserted Standards"). *See* D.I. 1. In response, HP filed counterclaims against Nokia, and alleges that (1) Nokia failed to identify the Asserted Patents to the relevant standard development organization ("SDO") when it made a contractual commitment to be prepared to license its essential patent claims on reasonable and non-discriminatory ("RAND" or "FRAND"[1]) terms; and (2) Nokia never intended to license its essential patent claims on RAND terms when it made its disclosure to the SDO. *See* D.I. 11. Nokia argues that each of HP's counterclaims fail because HP did not plead that the Asserted Claims are essential to the H.264 and H.265 standards. D.I. 19. Nokia also argues that HP's antitrust counterclaims fail because HP did not plead (a) that a specific alternative technology was not included in the Asserted Standards as a result of Nokia's technology being incorporated into those standards, and (b) the existence of a relevant market. *Id.*

---

[1] HP's counterclaims and Third Circuit precedent use the term FRAND (adding "fair"), while Nokia's Motion uses "RAND." The terms are interchangeable for the purposes of this opinion.

2

The H.264 and H.265 standards were developed by a SDO, namely the telecommunications sector of the International Telecommunications Union (the "ITU-T"). *Id.* at 2-3. SDOs develop technical standards that enable competing products from different manufacturers to use the technologies described in those standards. *Id.* As a part of that process, the SDO will frequently ask participants to contractually commit that—if a technical solution they propose for inclusion in a standard is covered by the claims of a patent owned by that participant—they will be prepared to grant a license to the patent claims needed to implement those technical solutions on either a royalty-free basis or on FRAND terms. *Id.*

HP avers that Nokia has represented, to both this Court and the ITU-T, that the Asserted Patents are necessary to practice the Asserted Standards. D.I. 20 at 8. The ITU-T's Common Patent Policy requires members of that organization to inform the organization when a member proposes incorporation of technology into a standard that is covered by that member's intellectual property rights. *Id.* at 7-8. However, according to HP, Nokia did not tell the ITU-T that the technology it proposed for incorporation into the Asserted Standards was covered by the Asserted Patents until after the ITU-T had incorporated that technology into the Asserted Standards. *Id.*

## II.  LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content

3

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

## III. DISCUSSION

### A. HP Properly Pled Standard Essentiality.

Nokia argues that HP's contract-based counterclaims (Counts I, II, and V) should be dismissed because HP did not affirmatively plead that the Asserted Claims are essential to the H.264 and H.265 standards. D.I. 19 at 5. Nokia argues that HP had a choice: either plead that Nokia's patents are essential to the standards, or deny that those patents are essential and concede its contract-based counterclaims. *Id.* In response, HP contends that it sufficiently pled essentiality by pointing to, in its counterclaims, Nokia's assertions in the Complaint that the Asserted Patents are essential, along with Nokia's representations to HP that its patents were essential. D.I. 20 at 9-11; Counterclaims, D.I. 11 ¶¶ 1, 28-35, 41, 47, 53, 55, 61, 67, 69, 75, 81, 87, 93, 99. In the District of Delaware this is sufficient: "Although at the case dispositive stage Defendant will need to prove essentiality by way of objective findings (i.e., whether practicing the relevant standards in fact leads to infringement of the patent) at the pleading stage it need only point to facts that render it plausible that the patent is essential." *Koninklijke KPN NV v. Coolpad Technologies Inc.*,

4

C.A. No 21-43-LPS-CJB, D.I. 55 (D. Del. Jan 11, 2022). A defendant may rely on a plaintiff's statements in so doing. *Id.* ("[T]he Court does not see why Plaintiff's alleged repeated statements that it 'belie[ved]' that the patent 'may be' essential, or that the patent 'is an essential patent' or that the patent 'ha[s] been recognized as essential' cannot fit that bill."); *see also Zenith Electronics, LLC v. Sceptre, Inc.*, No. LA CV14-05150 JAK (AJWx), 2015 WL 12765633, at *3-4 (C.D. Cal. Feb. 5, 2015) (denying motion to dismiss breach of contract claim where defendant alleged that the patents were "purportedly" or "allegedly" essential, establishing a defense challenging the essentiality of the patents-in-suit while maintaining its breach claim). Nokia's argument that HP must elect between pleading that the Asserted Patents are essential (under its counterclaims) or that the Asserted Patents are non-essential (under its infringement defenses) is flawed. HP "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P 8(d)(3). Thus, the Court finds that HP's counterclaims adequately plead facts that render it plausible that the Asserted Patents are essential.[2]

### B. HP Properly Pled its Breach of Contract Claim.

Nokia argues that HP's breach of contract counterclaim (Count II), which is premised on Nokia's request for injunctive relief, fails because HP does not cite language in the ITU-T Common Patent Policy or Guidelines (the "Guidelines") that would be breached by a patent owner seeking injunctions against infringing products. D.I. 19 at 7. However, HP has alleged that Nokia (1) was obligated to offer a license to the Asserted Patents at FRAND rates (Counterclaims, D.I. 11 ¶¶ 22-99), and (2) refused to do so. Instead, HP alleges, Nokia offered a rate far in excess of

---

[2] Nokia's argument that HP failed to sufficiently plead its unenforceability and antitrust claims by not alleging that the Asserted Patents are standard-essential fails for the same reason. *See* D.I. 22 at 8 (noting that unenforceability orders can extend to essentiality).

5

FRAND rates (*id.* ¶¶ 100-113) and unilaterally broke off negotiations in favor of seeking an injunction to extort a higher license rate (*id.* ¶¶ 110-111, 124-25). While HP does not identify language in the ITU-T Guidelines prohibiting injunctive relief, HP has adequately pled that Nokia breached its FRAND obligations by refusing to grant a license on reasonable terms and conditions, and that the injunction which Nokia seeks is part of that breach. *See KPN*, 21-43-LPS-CJB, D.I. 55 (pleading that "to the extent that the patent is essential, Plaintiff had to be prepared to grant a license under FRAND terms, and that Plaintiff was not in fact prepared to do so" was enough to "sufficiently identify a contractual provision that was breached.").

### C. HP Has Failed to Properly Plead A Claim Under Section 2 of the Sherman Act.

Nokia argues that HP has failed to state a claim for violation of Section 2 of the Sherman Act (Count IV) because HP failed to plead (1) Nokia's allegedly anticompetitive conduct with specificity, and (2) the existence of a relevant product market. D.I. 19. To state a claim for monopolization, a plaintiff must plead (1) the possession of monopoly power, (2) in a relevant market, and (3) anticompetitive conduct on the part of the possessor. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306-08 (3d Cir. 2007). For the reasons stated below, the Court finds that HP adequately pled anticompetitive conduct, but failed to sufficiently plead a relevant product market.

In support of its argument that HP did not sufficiently plead anticompetitive conduct, Nokia first argues that HP's Section 2 antitrust claims sound in fraud but do not meet Rule 9(b)'s heightened pleading standard. D.I. 19 at 10-12. The Court disagrees, and finds that HP has met the heightened pleading standard of Rule 9(b) because HP pled that (1) Nokia participated in the ITU-T's development of the Asserted Standards, (2) advocated for technical proposals for which Nokia had intellectual property rights without informing the ITU-T that its proposals were covered

6

by Nokia's patents, and (3) did not intend to honor its contractual obligation to license its standard-essential patents at a FRAND rate. *See, e.g.*, D.I. 11 ¶¶ 21, 28-99, 141. Those allegations identify "when the false FRAND declarations were made, by whom, and for which patents." *See Microsoft Mobile Inc. v. Interdigital, Inc.*, 2016 WL 1464545, at *4 (D. Del. Apr. 13, 2016); *Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n. 10 (3d Cir. 2002) (Rule 9(b) may be satisfied by pleading the "date, place or time" of the fraud.). Accordingly, those allegations meet Rule 9(b)'s heightened pleading standard.

Nokia also argues that HP failed to state a claim under Section 2 of the Sherman Act because HP did not identify a specific competing alternative technology that the ITU-T would have included in the Asserted Standards if Nokia's technology had not been incorporated into those standards. D.I. 19 at 13-14. However, in the Third Circuit, a plaintiff does not need to identify a specific competing alternative technology to state a claim for violation of Section 2 of the Sherman Act. *Broadcom*, 501 F.3d at 314 (3d Cir. 2007). In *Broadcom*, the Third Circuit explained that "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms ... coupled with a[ ] [standard-setting organization's] reliance on that promise when including the technology in a standard, and ... the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct." *Id.* Accordingly, HP did not need to identify a specific competing alternative technology at the pleading stage because Nokia's allegedly false promise to the ITU-T was, itself, "actionable anticompetitive conduct." *Id.* Thus, the Court finds that HP's allegations plausibly state a claim for violation of Section 2 of the Sherman Act.

The Court is not convinced by Nokia's arguments that it should depart from *Broadcom* and adopt a more stringent pleading standard for claims under Section 2 of the Sherman Act when those claims are based on the theory that a patent holder's failure to disclose intellectual property

7

rights in a declared essential patent created monopoly power for that patent holder. D.I. 22 at 9-10. The authorities which Nokia cites for that view are outside of the Third Circuit and do not follow *Broadcom*, which is binding on this Court. *See, e.g., Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2011 WL 4948567, at *5 (N.D. Cal. Oct. 18, 2011); *Lenovo (United States) Inc. v. Interdigital Tech. Corp.*, 2021 WL 1123101, at *7 n.3 (D. Del. Mar. 24, 2021). To succeed on its claim under Section 2 of the Sherman Act, HP need only show that the ITU-T relied on a promise from Nokia to license its patents on FRAND terms when the ITU-T chose to incorporate Nokia's technology into the standard—for example, by showing that the ITU-T, but for incorporation of Nokia's technology, would have either (a) incorporated into the Asserted Standards an alternative technology, or (b) omitted such functionality from the Asserted Standards. *Broadcom*, 501 F.3d at 314 (3d Cir. 2007). In other words, whether HP can show that the ITU-T would have incorporated a different technology but for Nokia's conduct is relevant to whether HP can prove reliance, but the Court finds that HP's failure to plead such facts is not fatal to its claim under Section 2 of the Sherman Act.

Next, Nokia argues that HP failed to state a claim under Section 2 of the Sherman Act because HP failed to plead a relevant market. D.I. 19 at 13-14. The Court agrees. For purposes of a claim under Section 2 of the Sherman Act, the "relevant market" is typically defined by reference to the rule of reasonable interchangeability and cross-elasticity of demand. *Broadcom*, 501 F.3d at 307. However, in the SDO context—where adoption of a standard results in the exclusion of alternative technologies that were not included in that standard—courts have defined the relevant market by reference to competing technologies, developed prior to adoption of the standard, that perform the function of the technology that was included in the standard. *Id.* at 315. ("It is the incorporation of a patent into a standard ... that makes the scope of the relevant market

8

congruent with that of the patent"), *see also Lenovo*, 2021 WL 1123101 at *7; *Microsoft Mobile*, 2016 WL 1464545 at *2; *ChriMar Sys., Inc v. Cisco Sys., Inc*, 72 F. Supp. 3d 1012 (N.D. Cal. 2014).

HP, in its complaint, defined the "Relevant Market" to include "products that implement or support the functionality described in the Asserted Standards." D.I. 1, ¶ 139. Nokia argues that the Relevant Market (as defined by HP) is not a "relevant market" because it is a market for *products* while Nokia allegedly anticompetitively incorporated patented *technology* into the Asserted Standards. D.I. 19 at 13-14. Accordingly, Nokia argues, it is unclear (1) what products have been excluded from the Relevant Market because of the ITU-T's inclusion of Nokia's technology in the Asserted Standards, and (2) whether Nokia is a participant in the Relevant Market. *Id.* HP responds that the context of its allegations make clear that the Relevant Market is a technology market. *See, e.g.*, D.I. 1, ¶ 140 ("the Relevant Markets contained competing technologies that could perform the same or equivalent functions purportedly claimed in Nokia's SEPs for the Asserted Standards."); *id.* ¶ 142 ("[B]y delaying its IPR declarations to the ITU-T, Nokia was able to remove competitors and their technology from the Relevant Markets, while ensuring its patented technology would remain, thus creating a monopoly in the Relevant Markets.").

On balance, the Court finds that HP has failed to plead a relevant market. HP defined the Relevant Market as a product market. D.I. 1 ¶ 139. HP has not pled a relevant product market because HP has not pled facts showing that all "products that implement or support the functionality described in the Asserted Standards" are readily substitutable for one another, are reasonably interchangeable, or share cross-elasticity of demand. *Broadcom*, 501 F.3d at 307 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). While some language in the

9

counterclaims supports HP's contention that it pled a relevant technology market, the counterclaims do not "make clear" that the Relevant Market is such a market because the complaint confusingly refers to the "Relevant Markets" but only offers a definition for the "Relevant Market." *Id.* ¶¶ 139-145. As a result, the Court is unable to meaningfully assess the boundaries of the markets that HP alleged. For example, the Court cannot determine whether HP's counterclaims allege the existence of (1) multiple relevant markets, where one relevant market is for products and another relevant market is for technology, or (2) a single relevant market that incorporates both products and technology. Accordingly, the Court finds that HP has failed to plead a relevant market because the Relevant Market that HP defined includes products that HP has not shown are relevant, and HP did not plead an alternative relevant market that is limited to technology that was competing with Nokia's technology when Nokia's technology was incorporated into the Asserted Standards.

## IV.   CONCLUSION

For the reasons stated above, the Court grants Nokia's motion to dismiss only as to Defendant's claim under Section 2 of the Sherman Act. HP's claim under Section 2 of the Sherman Act is dismissed without prejudice, and HP is granted leave to amend.